NEIGHBORS v. UNION CENTRAL LIFE INS. CO.—69 S. W. (2d) 618.

Eastern Section.   May 30, 1933.

Petition for Certiorari denied by Supreme Court, December 9, 1933.

W. B. Swaney and M. G. L. Roberts, both of Chattanooga, for appellant.

Miller, Miller & Martin, of Chattanooga, for appellee.

PORTRUM, J. These are two suits, consolidated, to recover on two life insurance policies issued upon the life of Q. M. Neighbors, deceased, in amount of $2,000 and $1,000 each. The anniversary date of both policies was fixed as the 26th day of August, the date of the first application, and the $2,000 policy was dated September 4, 1924, while the $1,000 policy was dated October 27, 1924. The last premiums were paid on these two policies August 26, 1929, which carried the insurance to the next anniversary date, August 26, 1930. On failure to pay these premiums the policies lapsed, and the automatic disposition of the policy values as provided in the policies became operative. On March 5, 1931, the insured, Mr. Neighbors, died. The complainant insists that both of the policies were in force on the date of the death of the insured, because of the extended insurance option applicable in the disposition of the reserve values after default in the payment of premiums. The company conceded that the reserve value was to be used by it under the terms of the policy in the purchase of extended insurance, but it insists this value was used in extending the policies, and the extension expired before the death of the insured. At the date of the lapse of the policies the company held two notes executed by the insured, one for $227, and one year's interest secured by the $2,000 policy, and another of $114 and a year's interest secured by the $1,000 policy, and after deducting this indebtedness the reserve value was insufficient to carry the policies until the date of the death of the insured.

On the last anniversary date there was due the policyholder as an earned dividend of $13.74 on the $2,000 policy, and of $6.87 on the $1,000 policy, making a total of $20.61. If this sum be added to the reserve value, and applied in the purchase of extended insurance, then it was sufficient to carry the policy beyond the date of the death of the insured. The complainant insists that it was the duty of the company to so apply the dividend; and, on the other hand, the defendant says to so apply it is a violation of the terms of the contract. The pertinent provisions of the contract are:

"16. Policy values. The surrender value may be used at the option of the owner of the policy in one of the following ways, all of equal value, as set forth in the following tables, provided there be no indebtedness or advances on the policy. If, on failure to pay premiums, no option is exercised, such value shall be applied as provided by Option 1.

"17. Option 1—Extended insurance. Applied to the extension of this policy as participating term insurance from the date from which the premiums have been paid, without any further payment (Table 1). The value of any paid-up additions will be used to increase the term of extension. Accumulations of dividends and interest may be applied to increase the term of extension. Dividends on extended insurance shall be paid in cash and only for completed policy years."

We might state here that the dividends during the life of the policy were used by the insured in payment upon the current premiums, and there were no paid-up additions, or accumulation of dividends to be applied to increase the term of extension. The policy contains a provision for the disposition of the current dividend. We quote:

"11. Dividend Options. Dividends may be withdrawn in cash; or applied to the payment of premiums; or left to accumulate with interest at 3%, increased from surplus interest earnings as apportioned by the directors, until the maturity of policy, subject to withdrawal at any time; or applied to the purchase of paid-up participated additions to the policy, convertible into cash at any time for the amount of the original dividend or the reserve of the additions, if larger, but payment may be deferred by the company for ninety days from the date of application therefor.

"12. Automatic Disposition. On payment of the premium, or on the policy anniversary, if no further premium is payable, if no other option has been elected, the dividend then due shall be applied to the purchase of paid-up additions. In the event of the death of the insured during the days of grace, the current premium being unpaid, if no other option has been elected, or if the policy shall lapse, the dividend then due shall be paid in cash. At the death of the insured during the continuance of the policy, the pro·

rata part of the dividend for the current policy year shall be paid in cash.''

This provision expressly provides that, ''if the policy lapse, the dividend then shall be paid in cash.'' The policies lapsed and the company was without right to use the dividends other than to pay them in cash. This provision under the policy does not, in our opinion, contravene the state statute regulating insurance, but is in conformity with it, for section 6208 of the Code of 1932 provides that: ''The owner of the policy shall have the right at his option to have the current dividend arising from such apportionment paid in cash.'' In view of this provision the company could make no other application of the current dividend in the absence of the option of the insured.

But it is further insisted that since the company held notes of the insured aggregating $341, and it had in its hands this current dividend belonging to the insured, then it was its duty to apply this fund as a payment on the note, which would relieve a like amount of the reserve value of the policies, which secured the notes, for use in the purchase of extended insurance. The case of Smith v. Insurance Co., 2 Tenn. Ch., 727, supports this theory, and holds: ''The company would be bound to apply the dividend to which the policyholder might be then entitled in such a manner as to save the forfeiture—that is, first to the payment of the interest.'' But in that case the policy was silent upon the application of the dividend, and the case was decided before the enactment of the above quoted statute in 1907. These policies make provisions for loans and their payments, and also provide upon default in the payment of the current premiums and the policy lapse, then the current dividend shall be paid in cash. We think under the terms of the contract the company is without right to apply the funds in its hand derived from the current dividend to the payment of an obligation secured by the policy, unless the policyholder has exercised his option that they be so applied.

In the case of Atlantic Life Insurance Co. v. Pharr, 59 F. (2d), 1024, the Circuit Court of Appeals at Cincinnati, reviewing the case coming up from a District Court at Memphis, held, under the provisions of a policy before it, that the current dividend was applicable to the payment of extended insurance, which kept the policy alive until the death of the insured. This policy was written in North Carolina and was not governed by the Tennessee statute, and contains a provision for the post mortem dividend. The provisions of that contract being so dissimilar to the provisions of the contract here, that the case is not authority for the construction of these policies.

Section 6180 of the Code of 1932 has reference to the forfeiture of the policy for the nonpayment of a loan secured by the

policy, and in case of default in payment requires thirty days' notice of the forfeiture to the insured as a prerequisite. This notice was not given in this case, and was not necessary, for the reason the policies were not forfeited for the nonpayment of the loan, but for the nonpayment of the current premium. The fact that a policyholder procures a loan on his policy gives him no advantage over a policyholder who has not procured a loan in the payment of premiums. Mills v. National Life Insurance Co., 136 Tenn., 350, 189 S. W., 691.

In connection with this question it is insisted that the notes were only liens upon the policies, and before the security could be applied to their satisfaction it was necessary the company give statutory notice to the insured, and until this was done they remained a lien upon the policies, and should be satisfied only after the policies have become a matured claim by the death of the insured. This insistence conflicts with the terms of the policies, which provide upon default and lapse of the policies, then in determining the reserve basis all indebtedness shall be first deducted and the statute provides for and authorizes this provision.

It is further insisted that the return dividends should have been applied by the company in partial payment of the current premiums due upon the policies, because in the past the company had accepted the current dividends in part-payment of the current premiums, but in each instance before the company accepted the dividends as part-payment, it required the payment of the balance of the premiums in cash or by a note; the insured never requested the right to pay the premiums in quarterly installments, and never made anything but annual payments of the entire premiums. There was no course of dealing, giving the insured the right to expect an application of the current dividend as a partial payment of the premiums, leaving the balance due. Slocum v. New York Life Insurance Co., 228 U. S., 364, 33 S. Ct., 523, 57 L. Ed., 879, Ann. Cas., 1914D, 1029.

We called attention at the outset that the policies were dated in September and October, 1924, and the anniversary date in each fixed as of the date of the first application, August 26, 1924. The appellant insists that this antedating of the anniversary date was in violation of the state statute, and that the reserve values should be fixed and determined as of the date of the policies. The company fixed the reserve values as of the anniversary date, August 26, 1930. After deducting the loan, the reserve value on the $2,000 policy was the sum of $2.96, which was sufficient to extend the insurance thirty-six days from August 26. This extension expired October 1, 1930. And the value or equity of the $1,000 policy after deducting the indebtedness was 95 cents, and sufficient to purchase

extended insurance for 23 days from August 26, which expired September 18, 1930.

The company has this to say in reference to the antedating:

"The premium dates are antedated to August 26, for Mr. Neighbors' own benefit. His age changed on August 26; and by making his premium payments come on that date, he was enabled to save money by getting the lower premium rate incident to a lower age. In so doing, he paid premiums for a period commencing prior to the delivery of the policies, but that small expense is offset many times by the deduction in the premium rate which he thereby secured."

█ █ Mr. Neighbors applied for the $2,000 policy on August 26, and paid the premium and received a binder receipt in order to take advantage of the age rate, the company contracted to issue the policy, conditioned only upon his insurability, and the fact the policy bears the date of its issuance by the company cannot be taken as a modification of the contract as made by the insured. The statute does not prohibit a person from making a contract of insurance as of the date of his application. The second, or $1,000 policy, stands upon a different footing. It was issued in October, upon the application made on August 26, and the question arises: Can the company continue to issue policies indefinitely upon this application in view of the statute prohibiting rebates? We quote a part of the application made on August 26:

"Application for insurance to the Union Central Life Insurance Co., of Cincinnati, Ohio.

"1. (a) Full name of applicant, Quimby Milton Neighbors.

"2. (a) Plan of insurance, ordinary life.

"(b) Amount of insurance $2000.

"(c) Premiums 'regular' $72.82. (disability benefits) $5.82, etc."

It will be noticed this application was for $2,000 of insurance, which was issued by the company in September. The second policy contains a photostatic copy of the first application and this additional application:

"Application. Detached from additional insurance certificate 743. I hereby apply to the Union Life Insurance Company for insurance of $1000 on the ordinary life plan with ———— disability benefits, with ———— double indemnity benefits, with premium of $40.57 each, payable annually.

"I have paid to C. A. Leawitte, agent, the first premium of $40.57, for which a receipt has been given me on the form included in said certificate. I agree that the statements and declarations made in my original application to the Union Life Insurance Company, on which policy No. 813880 has been issued; or made a part hereof as if fully recited herein. Dated at Chattanooga, this 22nd day of October, 1924."

This application was signed by the insured. . Section 6180 of the Code of 1932 is entitled "Provisions and conditions prohibited in policies," and subsection 3 provides: "For policy taking effect before application, when.—A provision by which the policy shall purport to be issued or to take effect before the original application for insurance was made, 'if thereby the insured would rate at an age younger than his age at date when the application was made according to his age at last birthday."

We think the application attached to the $1,000 policy must be considered the original application, and the policy could not be antedated to secure to the insured the benefit of a smaller age rating. The application of August 26 was for $2,000 of insurance, and this amount was issued by the $2,000 policy, which completed the contract. There was no provision in the application for the issuance of additional insurance based upon the application, with the option of either party to be exercised within a reasonable time. We think this $1,000 policy was issued in violation of the above-quoted statute.

██ But the insured's remedy is not the enforcement of a prohibited contract; he was only entitled to a rescission and the recovery of the premiums paid. Martin v. Insurance Co., 1 Shan. Cas., 361; Smith v. Insurance Co., 2 Tenn. Ch., 745; Bennett v. Insurance Co., 107 Tenn. (23 Pick.), 371, 64 S. W., 758. This relief cannot be granted under the prayer for general relief, because the suit is based upon the validity of the contract. It was the intention of the insured that the anniversary date of the $1,000 policy should be August 26, and the appellant does not pray for a reformation of the contract, making it take effect as of October, 1924; for these reasons there is no relief obtainable in this proceeding upon the theory that the contract was prohibited by statute.

██ The appellant argues that Mr. Neighbors overpaid his premiums for the years 1925 and 1926, and is entitled to a credit which would have kept his policies in force until his death. Mr. Neighbors paid each premium either by note, as the first was paid, by part cash, the due dividend, and a note for the balance. These notes fell due on the anniversary of the policy. The local agent made him personal advances for premium payments, and all these transactions over a period of years accumulated a great many papers, which are filed in the record and an accounting had. The notes now held by the company evidence more than the current premiums due, and necessarily included all past-due obligations; Mr. Neighbors was a careful business man, and his settlements should not be disregarded in the absence of fraud and mistakes. When these notes were given in payment of the premiums, or renewed, the company's receipt was given for the premiums, and by using these receipts as evidence of payment, and also using certain

paid notes as evidence of payments, the appellant advances the theory of an overpayment. She insists that some of these notes represent payments of premiums in advance. We do not think this testimony can overcome the settlement made by the insured, who would not have overlooked premiums paid in advance. We think the facts fail to establish that the insured paid more than he was given credit for on his premiums; the chancellor satisfactorily disposed of this issue in his written opinion. The facts are too many and too complicated to be here again reviewed.

The judgment of the lower court is affirmed.