## ANNA PALMER AND ANOTHER v. CENTRAL LIFE ASSURANCE SOCIETY OF UNITED STATES.[1]

January 18, 1935.

No. 30,216.

[1]Reported in 258 N. W. 732.

*Pfau & Pfau, Fred P. Carr, A. R. Shepherd,* and *George F. Malcolm,* for appellant.

*Wilson & Wilson* and *Raymond N. Klass,* for respondents.

LORING, JUSTICE.

In a suit brought by the beneficiary of, and the assignee of a part interest in, a life insurance policy, the plaintiffs had a directed verdict, and the case comes here upon appeal from an order denying the defendant's motion for judgment notwithstanding the verdict or for a new trial.

May 15, 1918, David A. Palmer insured his life for $5,000 with the defendant. The policy was a 20-payment life contract. The annual premium was $188.55, and this was paid until and including the premium due on May 15, 1928. Prior to that time Palmer had secured a loan on this policy from the society in the sum of $890. In order to pay the premium due May 15, 1928, he increased the loan to $1,160, the full cash or loan value of the policy as of that date. There was a dividend of $39.41 due on the 1928 anniversary of the policy which made $1,199.41 the total cash available, out of which Palmer paid the interest on the old loan, $69.60, the annual premium $188.55, and the old loan of $890. There remained $51.26 paid him by check under date of May 16, 1928. In March, 1929, he notified the society of his desire to surrender his policy for the then cash surrender value, and March 27, 1929, he was given a check for $245.30, which included the cash surrender value over and above the loan and paid-up additions and the dividends under the policy until May 15, 1929. The annual premium due on that date was not paid, and the loan indebtedness upon the policy equaled its cash loan value. Palmer, however, was later granted an extension of the time to pay the 1929 premium until November 15, 1929. December 6, 1929, he was notified that the policy had lapsed on account of the premium not having been paid on November 15 and that there was unpaid interest in the sum of $48.59. He was informed that unless the society heard from him by the

14th of that month it would assume that he did not desire to reinstate the policy. December 31, 1929, the society wrote him stating its assumption that he had decided to leave the policy in a lapsed condition and that the loan, having equaled the full cash value, the policy had been canceled, avoided, and deemed surrendered. Palmer took no further action in connection with the policy and made no further payments. He died June 5, 1931.

The policy provided:

"Except as herein provided the payment of premium or installment thereof shall not maintain the policy in force beyond the date when the next premium or installment thereof is payable."

It further provided:

"After this policy shall have been in force three full years the owner, within one month after any default, may surrender this policy and may elect;

"(a) to accept the value of this policy in cash, or,

"(b) to have the insurance continued in force from date of default, without the right to loans for its face amount and outstanding dividend additions less any indebtedness to the Company hereon but without total and permanent disability or double insurance benefits, or,

"(c) to purchase non-participating paid-up insurance, * * *."

Palmer exercised no option, and it is the contention of the defendant that the policy lapsed for nonpayment of premium; that the cash value thereof had been entirely absorbed by the loan, and hence that there was nothing with which to purchase extended insurance as provided under option (b), which became operative on account of Palmer's nonelection of either of the two options.

Relative to loans, there was a further provision of the policy:

"Failure to repay any such advance or to pay interest shall not avoid this policy unless the total indebtedness hereon to the Company shall equal or exceed such loan value at the time of such failure, and until one month after notice shall have been mailed by the Company to the last known address of the insured and of the assignee, of record at the Home Office of the Company, if any."

It is the contention of the plaintiffs that inasmuch as the society did not give the month's notice required by this provision that the cash surrender value of the policy remained intact and accomplished an automatic extension of the face of the policy for a period of approximately 22 years, leaving the loan outstanding like any other indebtedness which Palmer might owe the society, and that for that reason the coverage of the extended insurance was in force at the time of Palmer's death.

■ Except as restrained by the insurance laws of this state, the parties were free to contract, and the resulting contract, in so far as the language may have been selected by the insurer, is to be construed most favorably to the insured. Standard provisions required by statute are, however, to be construed as other contracts. Kollitz v. Equitable Mut. F. Ins. Co. 92 Minn. 234, 99 N. W. 892; Rosenthal v. Insurance Co. 158 Wis. 550, 149 N. W. 155, L. R. A. 1915B, 361, Ann. Cas. 1916E, 395; Mick v. Corporation of Royal Exchange, 87 N. J. L. 607, 91 A. 102, 52 L.R.A.(N.S.) 1074. The safety of the insurance structure is as much within the protection and within the purpose of the law as is the protection of the insured. It is too obvious to require comment that the safety of the one is necessary to the safety of the other.

We are here considering two provisions prescribed by 1 Mason Minn. St. 1927, § 3399, for incorporation in the standard form of policy and by § 3402 for policies in form other than as provided by § 3399. One of these provisions is that prescribed for the three options upon surrender or lapse of the policy for nonpayment of premium, and the other is for avoidance of the policy when the total indebtedness thereon to the insurer equals or exceeds the loan value, in which case one month's notice of the avoidance is required to be given to the insured or his assignee. The prescribed forms say how the cash value which is applicable to the options upon surrender or lapse shall be computed and in all cases direct the deduction of any existing indebtedness to the insurer from the amount of the cash value. Such deduction is also prescribed by 1 Mason Minn. St. 1927, § 3392, and the only question before us is whether that deduction is accomplished without the notice pre-

scribed in case of avoidance of the policy on account of the indebtedness equaling. or exceeding the loan value.

We find nothing in that part of the contract which relates to lapse for nonpayment of the premium which requires notice to the insured before deduction of indebtedness. The policy provides:

"The term for which the insurance will be continued or the amount of the paid-up policy will be such as the cash value will purchase as a net single premium at the attained age of the insured according to the American Experience Mortality Table and interest at the rate of three and one-half per centum per annum."

It is further provided:

"The cash value of this policy as shown in the following table of Cash or Loan Values is obtained by deducting from the reserve a surrender charge which in no case exceeds one and one-half per centum of the face of this policy."

And further:

"The figures in the following table are computed in accordance with the above provisions and upon the assumption that there is no indebtedness on the policy."

It seems clear to us that these provisions of the policy plainly provide for the deduction of any indebtedness before the cash surrender value can be applied to the purchase of extended insurance. The parties were contracting with reference to the insurance laws of this state.

At the outset we disagree with respondents' contention, upon which much of their argument is based, that a loan from the insurer on the security of a life insurance policy differs in no way from an ordinary commercial loan. We think that quite obviously it is entirely different. The loan note in the case at bar names no due date, but merely requires payment of interest annually in advance, and as security for the payment of the loan and interest assigns the policy to the society. If the interest is not paid, it is to be added to the principal of the loan and to bear interest at the same rate. Like the policy, the note provides for avoidance and

surrender of the policy when the total indebtedness equals or exceeds the cash surrender value of the policy and requires 31 days' notice of such avoidance. Significantly, it contains an entirely separate provision that if the policy becomes extended term insurance, the existing indebtedness under the loan shall be adjusted as provided in the policy. On the back of the note under the heading "Policy Loan Terms and Conditions" it is stated that loans are made to mature at a future anniversary date of the policy and that loans, when due, may be extended by payment of interest and premium for one year in advance. As pointed out by Mr. Justice Holmes in Board of Assessors v. New York L. Ins. Co. 216 U. S. 517, 522, 30 S. Ct. 385, 386, 54 L. ed. 597, 601, and again by Mr. Chief Justice Hughes in Williams v. Union Cent. L. Ins. Co. 291 U. S. 170, 54 S. Ct. 348, 78 L. ed. 711, 92 A. L. R. 693, these loans are in reality but payments to the insured against the reserve on the policy and do not create a personal liability or a debt of the insured, but are merely deducted from the sum the insurer ultimately must pay. They never could be sued for. The only security which the insurer has and the only way it can compel satisfaction of the loan is through the protection which it has in the existence of the reserve which results in the cash or loan value in the policy; consequently, when that reserve is depleted by advances made against it for so-called loans on the policy, the cash surrender value is likewise depleted and no longer available for the purpose of extended insurance.

The avoidance of the policy for failure to pay a loan may only be accomplished when the total indebtedness equals or exceeds the cash or loan value; whereas the provision for extended or paid-up insurance continues the coverage in force and automatically affords protection if any cash value is available for that purpose. The contract is continued in force; it is not avoided. Situations may arise under the contract when loss can be prevented only by avoiding the policy and where the provisions which take effect only upon the failure to pay premiums are inadequate protection or are not available. Respondents contend that interest upon policy loans can never accumulate fast enough to exceed the increase in reserve

value and that hence the avoidance clause requiring notice can never become operative without a lapse in premiums which puts into operation the option provisions. We do not think this contention is sound. Interest on policy loans usually runs at six per cent; earnings on the reserve are computed at a lower rate. Certainly in case of limited payment policies after all premiums are paid, interest on a maximum loan may accumulate so as to exceed the increase in the reserve, and consequently the loan plus interest may exceed the cash or loan value of the policy. In such cases the insurer has a right to avail itself of the provision which authorizes an avoidance of the policy for failure to pay the indebtedness when it exceeds the cash value. It may do this upon one month's notice. The two remedies are distinct, wholly independent of each other and plainly applicable to two different contingencies. If plaintiffs are right in their contention that loan plus interest can never exceed cash value as long as premiums are paid, then it becomes still more obvious that the clause requiring notice in order to avoid the policy is wholly independent of and distinct from the provisions continuing the policy in force after lapse of premium. In a 20-payment policy such as this, the conditions under which the avoidance clause may take effect will arise only after the payment of the twentieth premium, whereas the extended insurance provision may take effect only upon lapse of premium before the policy becomes paid up by the payment of the twentieth premium. The provisions of the contract for extended insurance take effect automatically unless another option be elected.

We are convinced that the legislature did not intend to require notice prior to the deduction upon lapse for nonpayment of premium. Neither does the contract here before us. The distinction here made between the remedy by deduction from the cash value and that of avoidance for excess loan is supported by our opinion in Schoonover v. Prudential Ins. Co. 187 Minn. 343, 245 N. W. 476; Mills v. National Ins. Co. 136 Tenn. 350, 189 S. W. 691, 693; Hally v. Standard L. Ins. Co. 38 Ga. App. 623, 144 S. E. 674; Bach v. Western States L. Ins. Co. (C. C. A.) 51 F. (2d) 191. As said in the Tennessee case, where the same contention was made by the plaintiff [136 Tenn. 361]:

"We do not find any provision of the policy whereby it could be contended that continued insurance in the full amount could exist, and an indebtedness be outstanding at the same time. When the policy lapses it becomes, so to speak, in liquidation under its terms, and if the reserve or cash value has been withdrawn, there is no fund left to pay for continued insurance during the extended term, and therefore the extended term insurance fails to take effect.

"The assured must have known that he had anticipated the cash value of his policies, and had withdrawn the only fund with which continued insurance was to be purchased, and must have known that when the policy lapsed, the said indebtedness under the terms of the policy would be deducted from the cash value. This was the condition under which the policy provided he was entitled to make the loan. He could not withdraw the money which he had paid in, and at the same time insist upon the insurance which that money would buy if left in cash to the credit of his policy."

The court considered that the provision in the premium note, there involved, that default in interest or lapse of the contract should be sufficient cause for cancellation without notice, was in accord with the provisions of the policy which were similar to those here involved. The court drew the distinction between the two situations we are discussing and said [136 Tenn. 363]:

"In other words, as long as the policy was kept alive by the payment of annual premiums, the note was payable upon demand made; but when a lapse of the contract occurred, that should be sufficient cause for cancellation without notice, and operated itself as a demand under the very terms of the note, and the company in the event of such lapse was authorized to apply the cash value to the payment of the note. This provision is a reiteration of the terms of the policy on this subject."

In Pacific Mut. L. Ins. Co. v. Davin (C. C. A.) 5 F. (2d) 481, 483, where these clauses were under consideration, the court said:

"It is admitted that no notice of forfeiture for the nonpayment of the note was ever sent, nor was any required. The policy was not forfeited for the nonpayment of the note. What happened was

that the premium fell due on the 2d of June, 1923. It was not paid at that time nor during the 31 days' grace. Entirely irrespective of whether a note was outstanding or not, the insured had the right to elect any one of the three options given him by the policy, and upon his failure so to elect, automatically the policy for itself elected the third option, and then for the first time the fact that he owed any money on the note properly entered into consideration. His policy was to be extended for such time as could be paid for by the cash surrender value after all indebtedness due by him was deducted from it. It so happened that when the indebtedness due by him was deducted from the cash surrender value of his policy, the result was a minus quantity, and he was not entitled to any extension at all. This is a very different situation from that contemplated by the policy provision relied on by the administrator."

It is true, as respondents say, that in this case the indebtedness was a premium note for the third premium, but the case was considered by the court as if the cash surrender value of the policy was available, and treated the note as an indebtedness to be deducted therefrom. Obviously the policy was security for the note. We think the case is in point.

In Bach v. Western States L. Ins. Co. 51 F. (2d) 191, 192, the circuit court of appeals, tenth circuit, said of a similar contention:

"The prayer of the plaintiff is that she be entitled to take the reserve in cash and also have its value in extended insurance. This is contrary to the agreement of the parties, and no insurance company could exist that paid out its reserves twice.

"Plaintiff relies, to sustain this unusual contention, largely upon the clause of the policy which provides that the policy shall not be avoided for failure to pay a policy-loan, unless (a) the loan and interest exceeds the cash value of the policy nor (b) until after a month's notice to the insured. This clause has no application to the facts in this case, because the policy was not avoided for failure to pay the policy loan; the policy, in the true sense, was not avoided; the policy provided for certain rights of the insured in event he ceased paying premiums; he did cease paying premiums

and he has had his rights. But if we consider the policy as being 'avoided,' it was the nonpayment of the premium and not the policy-loan that resulted in the avoidance. The loan was paid by charging it against the reserve. Reading the entire policy, the purpose of this clause is clear. The accruing interest on a policy-loan might equal the reserve value of the policy between premium dates. It would be manifestly unfair to avoid the policy on the date the accruing interest equalled the reserve values without giving notice to the insured. No such situation is here presented."

Here the loan agreement provided for waiver of notice although the policy contained the provision for notice in case of avoidance for excess indebtedness. The court, however, did not place its decision on the waiver clause. It appears to have considered the two provisions here under consideration as distinct and applicable to different contingencies.

We adhere to our conclusion in Schoonover v. Prudential Ins. Co. 187 Minn. 343, 245 N. W. 476, and hold that the notice required, when the policy is avoided for failure to repay advances made in the form of a policy loan, is not required in order that the indebtedness, so-called, shall be deducted from the cash surrender value when, under the automatic provisions of the policy upon lapse, the same is applied to the purchase of extended insurance. We have quoted from these authorities, but logic and common sense would have compelled the same result in the absence of precedents. We have examined all the cases cited by respondents. We think they are distinguishable, but if they are not we are not persuaded by their reasoning. Palmer v. Mutual L. Ins. Co. 114 Minn. 1, 130 N. W. 250, Ann. Cas. 1912B, 957, came here on an order sustaining a demurrer and related to a paid-up policy with an alleged reserve value of $2,216.85 which the company sought to avoid for an indebtedness of $1,445. The cancellation of the policy under those circumstances was held to impose a penalty and to be void. The court pointed out that the deduction of the debt from the actual reserve with payment of the remainder to the insured would not offend the law. That case is a good illustration of the necessity for the notice required in case of an attempted avoidance and the propriety of the contract for deduction in case of lapse of premium.

We have assumed but do not decide that defendant's letters did not amount to the notice required for avoidance. If they were insufficient, as plaintiffs contend, they left the rights of the parties to be determined by the other provisions of the contract. It is not contended that they preclude such resort.

There was no cash surrender value in Palmer's policy to purchase extended insurance, and the coverage had ceased to be in force at his death.

■ The respondents have not argued their second contention, that the surrender charge was wrongfully deducted from the cash surrender value. That question has been disposed of against respondents' theory in Erickson v. Equitable L. Assur. Soc. 193 Minn. 269, 258 N. W. 736.

The order denying defendant's motion for judgment notwithstanding the verdict is reversed and the case remanded with directions to enter judgment for the defendant.

