SMITH *v.* JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY.

4-4952

Opinion delivered February 28, 1938.

*Holland & Barham,* for appellant.

*House, Moses & Holmes* and *H. B. Solmson, Jr.,* for appellee.

GRIFFIN SMITH, C. J. Appellant is the beneficiary of an insurance policy written by appellee August 11, 1916, on the life of J. F. Smith. The assured died May 4, 1936. Annual premiums were paid to August 11, 1935. Before default occurred a quarterly premium was paid, extending the policy to November 11, 1935. There were no further payments.

The contract provides that all premiums shall be paid annually in advance, "or in regular equivalent semi-annual or quarterly installments. . . . Except as herein expressly provided, the payment of any premium or installment thereof shall not maintain this policy in force beyond the date when the succeeding premium or installment becomes payable. A grace period of 31 days, during which the policy shall remain in force, will be granted for the payment of premiums or regular installments, after the first."

The policy also provides for participation by the assured in surplus distributions; for cash withdrawal values, and for premium loans.

Appellant's contentions are summed up in the following extracts from the brief: "Under the court's finding, we have, on November 11, 1935, a policy with a cash-surrender value of 39 cents more than the indebtedness. And further, that the appellee took no action whatever in regard to the matter except to send a letter after December 11, 1935, acknowledging the policy was in force and a notice on January 17, 1936, that $18.98 would be due on February 11, 1936."

Appellee admits sending the letter, as alleged, but testified that it was mailed through error, and that there was no intention to waive the previous forfeiture.

The controversy, in effect, is narrowed down to the single question, What were the rights of the assured on November 11, 1935, or thereafter, when the cash-surrender or loan value of his policy exceeded by 39 cents the amount which, under the assured's directions, had been charged against it?

Trial was by the court, the judge sitting as a jury, and findings of facts are entitled to the same weight as a jury's verdict.

The court found that the cash-surrender value on November 11, 1935, was $821; that loans amounted to $809.06; that interest of $157.95 was chargeable, of which $146.40 had been paid, and that the full indebtedness was $820.61. There is substantial evidence to support this finding.

The assured, under his contract, had the right to borrow "on the sole security of the policy . . . a sum not to exceed the cash-surrender value at the end of the then current policy year, of the policy and of any outstanding dividend additions, less any outstanding indebtedness and interest on the total amount loaned to the next policy anniversary, and less any unpaid balance of premiums for the current policy year. . . . Failure to repay the loan or to pay interest thereon shall not avoid the policy while the indebtedness is less than the cash-surrender value. When the indebtedness equals such value the policy shall become void 31 days after notice has been mailed to the insured."

Under the subtitle "Non-Forfeiture Options" it is provided that in case of default in the payment of any annual premium or installment thereof, then, (A) without action on the part of the holder, the policy will be continued for its face value in participating paid-up life insurance; or, (B) if the holder so elect, the policy will be terminated and the value paid in cash; or, (C) upon written request within 90 days from date of premium default, the policy will be continued at its face amount . . . for its value in participating extended insurance.

It is settled in this state that a policy provision reserving to the insurer the *right* to cancel for failure of the assured to pay loans or interest does not have the effect of rendering the policy void when such default occurs. The reservation, standing alone, is not self-executing. The policy remains in force as to any values it may possess until affirmative action is taken by the insurer to invoke the privilege so reserved.

In *Federal Life Insurance Company* v. *Pearrow*, 191 Ark. 597, 86 S. W. 2d 1106, we said: "Where the total indebtedness against said policy is equal to or in excess of the loan value thereof, the said company shall have the right to forfeit and cancel said policy on thirty days' written notice."

It may also be said that failure to pay a premium will not have the effect of automatically cancelling the policy if at the time such payment falls due other rights or options are outstanding in favor of the assured. In the instant case there were existing rights—rights evidenced by a credit differential of 39 cents. In connection with this balance the following language is to be considered:

"In case of default in the payment of any premium or installment thereof on said policy, the company may terminate said insurance, subject to any provisions of law or of the policy prescribing the conditions under which this right may be exercised, and may deduct the indebtedness hereby secured from the amount which would otherwise be the surrender value of the policy, and apply the residue thereof, if any, to the purchase of paid-up or extended insurance, when such insurance is provided for by the terms of the policy, or pay it in cash if those entitled to receive it so elect."

The preceding quotation is from the loan agreement, as distinguished from the policy itself—that is, it is in the note.

The policy condition that "Failure to repay the loan or to repay interest thereon shall not avoid the policy while the indebtedness is less than the cash-surrender value" is coupled with an additional provision that "When the indebtedness equals such value, the policy shall become void 31 days after notice has been mailed to the insured and assignee."

While the language of the note differs somewhat from that of the policy, it is not in conflict therewith. The term "may," used in defining the company's right to terminate the policy for nonpayment of premium, does not enlarge the policy-contract to the extent of *requiring*

the company to act affirmatively except as stipulated in option "A."

Reading the various provisions together, it is clear that appellee did not have the right on November 11 to cancel the policy for failure to pay the loan or interest without mailing the required notice. But it does not follow that because the mailing of such notice was a condition precedent to the company's right to avoid the policy for failure to repay the *loan and interest* when they equaled the cash-surrender value, the policy would not forfeit for failure to pay premiums when values ceased to exist. The contract explicitly provides that its life is dependent upon payment of premiums, and that "payment of any premium or installment thereof" shall not maintain the policy in force beyond the date when the succeeding premium or installment becomes due "except as herein expressly provided." The "express provision" refers to options A, B, and C, only "A" being pertinent here. Failure of the *assured* to take affirmative action imposed a duty upon appellee to proceed under option "A"—that is, to continue the policy as paid-up insurance for its value.

The trial court having found for appellant that on November 11 there was a value of 39 cents, and $821 being the sum necessary to purchase $1,209 of paid-up insurance under option "A," appellant contends that the recovery should be $364.71, this being the remainder after computing interest to May 4, 1936, and deducting principal and interest of $844.71 from such value. The statutory penalty of 12 per cent., and an attorney's fee, are also asked.

The fallacy of appellant's position lies in a failure to concede that appellee was entitled to collect premiums, and that it had a right, upon failure of the assured to pay such, to exercise option "A" without notice. But, appellant urges, there *was* a value of 39 cents, and option "A" was *not* exercised.

The value contended for did exist as of November 11, and at that time a failure to pay the premium, or failure to pay the note and interest, or both, could not avoid

the policy. But the premium payment of August 11 extended the policy *not* to November 11, but, conditionally, to November 11 *plus 31 days*. It is true that if the assured had died within the grace period the company had the right to deduct from any amount due him that proportion of the premium earned between November 11 and the date of death, but during the period of grace the policy could not be cancelled or converted because of failure to pay the premium on or before November 11.

When thirty-one days expired, the indebtedness was increased from $820.61 to $825.53, the difference of $4.92 being interest on the loan which accrued during the period of grace. The result was that instead of having a credit of 39 cents when the forfeiture occurred, an indebtedness of $4.53 had resulted.

It may be urged that if interest is chargeable during the period of grace, the cash-surrender or loan values must be apportioned to correspond, and that the same right would exist with respect to participation in dividends. Answer to this argument is that the policy provides otherwise.

*Security Life Insurance Company* v. *Matthews*, 178 Ark. 775, 12 S. W. 2d 865, was determinative of the proposition that where loan values, by the terms of a policy, accumulate in annual amounts, but the insured is given the right to pay premiums quarterly, the loan value must be apportioned to correspond with the quarterly privilege of premium payments.

The table of values in appellant's policy shows $810 to have been available August 11, 1935. By reason of acceptance of a quarterly premium appellee, consonant with the Matthews case, has interpreted the policy as giving the assured the benefits of apportionment. This is reflected by the admitted value of $821.

The judgment is affirmed.