MARTHA ELIZABETH BORING, a widow, v. THE KEN-
TUCKY HOME MUTUAL LIFE INSURANCE COMPANY,
a foreign corporation.

7 So. (2nd) 587                 Division B
April 10, 1942      Rehearing Denied May 7, 1942

Dewey A. Dye, and Alfred P. Marshall, for appellant.

Osborne, Copp & Markham, H. P. Osborne, and J. Henson Markham, for appellee.

THOMAS, J.:

Appelant is the widow of Richard Morris Boring who held an insurance policy with the predecessor of the appellee. April 1, 1921,—the dates which we will give are important—the policy was issued and he continued the payment of premiums on it until Janu-

ary 1, 1933. Thereafter no premium was ever paid. He died January 1, 1938. At the time of the default in the payment of premium on April 1, 1933, there was an indebtedness against the policy consisting of a loan and a reserve lien and interest amounting to more than the entire cash value of the policy.

Summarizing, at the time of the failure of the insured to pay the last premium and at the expiration of period of grace he had borrowed to the extent of the cash value of the policy and no further amount was paid by him to the insurer. This condition remained unchanged and it was not until five years later that the insured died and this action was brought by the beneficiary. We consider this a fair statement, brief as it is, of the salient facts as they appear in the stipulation of the parties.

That we may determine the controversy it is necessary to construe, in the light of the facts we have given, four features of the insurance contract appearing under the titles: (1) "Cash Loans;" (2) "Options on Surrender or Lapse;" (3) "Non-Forfeiture;" and (4) "Premiums" and also to consider with them a portion of the separate loan agreement.

It is principally under the first, because of its conclusion, that appellant claims the right to recover. Provision is made there for lending to the policy holder under certain conditions the amounts designated in a table appearing elsewhere in the contract. It is not necessary to quote more of this section than the closing sentence; Failure to pay any such loan or interest shall not render the policy void unless the total indebtedness to the Company shall equal or exceed the cash value of the policy hereinafter specified, *and until one month after notice thereof shall*

*have been mailed* by the Company to the last address of record of the insured . . ." (Italics supplied). In other words, she insists that inasmuch as the amount of the loan exceeded the cash value of the contract it was incumbent upon the company to send a notice of cancellation and not having done so the contract never terminated, even though payment of premiums. had long since ceased.

In reply the appellee, with whom the circuit judge agreed, points to the subsequent stipulation in the policy, dealing with the failure to pay premiums or indebtedness, which appears under the title "Non-Forfeiture." As a preface to this feature there are certain provisions, designed "Options on Surrender or Lapse," that upon any default in payment of premium, this policy may be surrendered to the Company prior to the expiration of the period of grace," in which event any indebtedness to the company should be deducted from the amount of the then cash value and written request the policy holder could have the residue applied "to extend the insurance . . .; to procure a reduced amount of paidup insurance . . ."; or might "receive such remainder as a cash value."

There follows the "Non-Forfeiture" clause setting out that if the insured fails to pay the premium or any indebtedness and does not exercise any of the options we have quoted the company is bound to grant the extended insurance "hereinbefore provided," which we construe as referring to the paragraph designated "Options on Surrender or Lapse" although between their places in the policy there appears a table of computation set between double lines. As we have seen, where there was indebtedness to the company, the policy holder could exercise his preference, after

deduction of the indebtedness from the cash value, of having the balance applied to extended insurance or paid-up insurance, or of receiving it in cash. The difficulty here is that there was no balance. That being true there was nothing which the insured could claim under the policy by way of cash or insurance.

We think that the provisions with reference to cancellation of the policy pursuant to the "Cash Loans" clause for failure to pay indebtedness and lapse of it for default in paying premiums under the "Non-Forfeiture" clause are independent and that the policy holder having failed under the latter, the requirements of the former would not apply. In considering this particular provision it is well to study the loan agreement and the section titled "Premiums" and their references to the parts of the insurance contract already quoted. It was specified in the "Policy Loan Agreement" that "if any premium . . . is not paid when due . . . , then, at the expiration of the period of grace . . . this loan shall become due . . . and shall be paid by deducting the amount . . . from the cash value . . . and the balance . . . shall be applied in accordance with the non-forfeiture provisions . . ."

It was expressly stated in the "Premiums" clause that "the failure to pay any premium . . . shall cause this policy to become null and void, except as provided in the section entitled 'Options on Surrender or Lapse' and 'Non-Forfeiture,'" the two parts of the policy to which we have already referred. Reading and interpreting those portions and the one just quoted, denominated "Premiums," we conclude that the contract became void for the failure of the holder to pay the premium. No privilege was exercised by him to extend the insurance to procure a paid-up policy or to

receive a cash balance and, in fact, none was exercisable because at the time of the default there was no balance favorable to him.

It would, in our opinion, be placing a strained construction on the contract to hold that in circumstances like those reflected in the record a policy holder could remain in default by not paying premiums for a period of five years, meanwhile having borrowed the entire cash loan value of a policy, and that his beneficiary could recover the full amount of the insurance less the loan simply because, despite the "Non-Forfeiture" and "Premium" clauses, the company did not give notice that the policy had become void under the "Cash Loan" provision. It is a fair construction of the latter that the company could not cancel the policy because the indebtedness had reached in amount the cash loan value and deprive the policy holder of insurance protection, the while receiving his premiums, and serving no notice of the termination. By employing this interpretation a policy holder would be given the choice, upon receiving such notice, of either discharging the indebtedness or discontinuing the payment of the premiums.

The language of the policy lacks much as a model of clarity, however, we do not find in it the ambiguity which would make it necessary to indulge the construction against the insurer requested by the appellant. In Columbus Mut. Life Ins. Co. v. Hines, 129 Ohio St. 472, 196 N. E. 158, it was stated "the payment of the premium is the very essence of a contract of insurance . . . " and it is inconceivable that the insured could have believed that his insurance protection remained in force for a period of five years without the payment of any premium, he having bor-

rowed at the beginning of this long period of default the entire amount of the cash loan value of his policy. The general scheme of the contract was to grant certain protection to the policy holder or his beneficiary in exchange for the periodical remittances by him. As is usual in contracts of insurance there was a cash loan value which grew larger as the policy aged. In the event the indebtedness became greater than this value and the premiums were being paid the company could not discontinue the insurance protection without giving the insured notice. On the other hand if the insured defaulted in his premiums any amount remaining to his credit could be applied in one of three ways according to his choice. When he borrowed to the full extent of the value of the policy and discontinued the payment of any premiums and had no balance favorable to him there was no need to exercise any of the options because there was nothing to his credit available for the purpose, namely, extended insurance, paid-up insurance or cash dividend. No ambiguity results in giving the "Premiums" clause a literal construction, namely, that upon default in the payment of premiums and in the absence of the exercise of an option the policy would become void inasmuch as the record shows that the cash value was exhausted at the time of default. Inter-Southern Life Ins. Co. v. Morrow, 227 Ky. 293, 12 S. W. (2nd) 692, Inter-Southern Life Ins. Co. v. Zerrell, (C.C.A., 8th Cir., 1932) 58 F. (2nd) 135. That is exactly what happened, so the circuit judge held, and with his conclusion we agree.

Affirmed.

BROWN, C. J., TERRELL and CHAPMAN, JJ., concur.