CLAYTON BURGARDT, appellant, v. LINCOLN NATIONAL LIFE INSURANCE COMPANY, appellee.

No. 52300.

(Reported in 149 N.W.2d 292)

MARCH 7, 1967.

REHEARING DENIED MAY 1, 1967.

Stewart, Miller, Wimer, Brennan & Joyce, of Des Moines, for appellant.

Henry & Henry, of Des Moines, for appellee.

MASON, J.—This is a suit for the proceeds of a life insurance policy issued by Old Line Insurance Company and assumed by defendant, The Lincoln National Life Insurance Company. The insured died and his original beneficiary assigned her interest to plaintiff, Clayton Burgardt.

This case has been before us on a prior occasion involving the short limitation-of-action provisions of the policy, which had been pleaded by defendant and made the subject of motion for determination of law points. The trial court held the action barred and we reversed. Burgardt v. Lincoln National Life Ins. Co., 244 Iowa 456, 56 N.W.2d 15.

On remand trial to a jury being waived, the matter was tried to the court upon the pleadings and stipulated facts.

The trial court held the policy lapsed for failure to pay the premium due November 20, 1940, was of no force and effect at insured's death and dismissed plaintiff's petition. Plaintiff appeals.

I. This appeal presents the question whether the policy was in force at insured's death. The answer requires a determination whether a duty was imposed on the company to give insured a month's notice as a condition to terminate the policy. It was stipulated defendant did not send any notice or notices of failure to pay premium loan indebtedness. Parties agree there is no ambiguity in the contract.

Plaintiff contends the company's failure to serve the one month's notice as required by the policy, had the effect of continuing it in force until insured's death.

Defendant, on the other hand, maintains the one month's notice was necessary only if the company sought to cancel the policy for nonpayment of insured's loan indebtedness and interest thereon, but not necessary to terminate it for nonpayment of premiums; the one month's notice provided for in the policy in the paragraph entitled "Cash Loans" is only to be given when the insurer wishes to avoid the policy because the indebtedness thereon equals or exceeds the cash value.

II. The policy issued November 20, 1928, insured the life of Elder Nicholas Burgardt for $1500, naming his wife Yardie as beneficiary. The insured died July 12, 1942, of cancer.

Plaintiff alleged the policy was in full force and effect at insured's death and defendant refused payment.

The amount plaintiff is entitled to, if he prevails, is stipulated to be $1168.92 with five percent interest from April 9, 1949, the date of submission of proof of death.

Defendant pleaded (1) insured, in his application for the policy sued on, asked that the automatic loan privilege be effective and, therefore, the provisions of the policy relating to automatic premium loans were in full force and effect. This was admitted in reply; (2) insured failed to pay the quarterly premium due August 20, 1934, and thereafter, except the one due November 20, 1936, which he paid on an annual basis in the amount of $35.10; defendant advanced quarterly premiums due August 20 and November 20, 1934, and February 30, 1935, a semi-annual premium due May 20, 1935, and an annual premium due November 20 for the years 1935, 1937, 1938 and 1939. This was admitted. Defendant also pleaded it notified the insured in writing of the premium payments under the policy's automatic loan provisions. All the notices sent were stipulated; and (3) insured failed to pay the premium due November 20, 1940; on this date the policy had a loan value of $249 less total outstanding indebtedness by reason of previous advances of premiums and interest of $226.45; the balance of loan value was insufficient to pay the November 20, 1940, annual premium and interest on the

total indebtedness to November 20, 1941; defendant applied the loan value balance of $22.55 to continue the insurance as term insurance until May 8, 1942; no tender or payment of the November 20, 1940, premium was ever made and the policy had lapsed and was no longer in force.

Plaintiff admitted defendant applied a sum termed by it "balance of loan value available on November 20, 1940" to continue insurance as term insurance but denied the policy provided for such action by defendant and specially pleaded the policy provided otherwise.

To sustain this affirmative allegation plaintiff alleged that among the benefits, privileges and conditions set forth in the policy, three are material here:

(1) The part entitled "This policy is non-forfeitable", which provides: "After completion of premium payments, in cash for the first three policy years if any subsequent premium is not paid on the date when due, the insured may within 31 days after default in the payment of any premium, but not later, elect one of the following options: 1. To surrender this policy at the home office of the company for its cash value; or 2. To surrender this policy at the home office of the company for a paid-up policy, payable at the same time and upon same conditions as this policy (without disability or double indemnity benefits), or 3. To let the insurance for the face amount hereof, continue as term insurance (without disability or double indemnity benefits), reckoned from the due date stated in the policy of the unpaid premium; under which option a pure endowment may be payable in cash to the insured, if living at the end of the endowment period hereof, if the value available under said option is in excess of that required to purchase paid-up life insurance for the face amount of this policy.

"If the insured shall not, within the 31 days after default, surrender this policy at the home office of the company for its cash value as provided in option 1, or for a paid-up policy as provided in option 2, the insurance will be automatically continued as provided in option 3, unless the insured shall have requested in writing automatic premium loans as herein provided."

Plaintiff pleaded, with respect to these provisions insured had requested in writing automatic premium loans as provided in the policy. This was admitted in defendant's answer and was stipulated.

(2) The part entitled "Automatic premium loans" insofar as material here provides: "The company will advance any and all premiums becoming due hereon and remaining unpaid on the last day of the period of grace hereunder, and will charge such premium or premiums as a loan against this policy, together with interest at six per cent per annum in advance to the end of the current policy year, if written request has been received at the home office when application is made for this policy, or while no premium is in default, provided that the company will not so advance and charge up a premium, if the amount thereof and interest thereon, as aforesaid, together with any outstanding indebtedness hereon to the company, shall exceed the cash value of this policy at the end of the period which such premium, if advanced and paid would cover. Interest on any such loan shall, for subsequent policy years, be payable annually in advance at six per cent per annum. Such advancing and charging up of premium will be discontinued at any time on receipt at the home office of the insured's written request therefor. *Premium loans hereon shall be subject to the same terms and conditions as any loan granted hereon by the company under the cash loan privilege above set forth.* Any indebtedness thus created will be a first charge against the policy ranking in priority to the claim of any beneficiary or assignee. While this policy is thus carried in force, the insured may, without medical examination, resume payment of premiums." (Emphasis supplied.)

Plaintiff pleaded insured was entitled to the benefits of the clause emphasized.

(3) The "Cash Loan Privilege above set forth" so far as material provides: "Failure to repay any loan granted hereon by the company, or to pay interest thereon, shall not. void this policy, unless the total indebtedness hereon to the company shall equal or exceed the then cash value of the policy, nor until one month after notice shall have been mailed by the company to the last known address of the insured and of the assignee, if any."

Plaintiff pleaded defendant had failed to comply with the provision.

All premiums due the first five policy years were regularly paid in cash, premiums of $35.10 were made on an annual basis the first three policy years, premiums of $9.30 were made on a quarterly basis thereafter during this period; commencing with the eighth policy year, 1935, all premiums were paid on an annual basis with the 1936 premium being paid by insured in cash and the other years paid by loans. No request in writing or otherwise was ever made by insured to change from the annual basis to a semiannual or quarterly basis, as required by the policy.

In November 1940, evidently during the grace period, defendant calculated a further loan of an annual premium could not be made from the cash or loan value which was less than the annual premium but, of course, more than a quarterly premium. No notice was sent to insured advising him of the status of his policy loan account or that the company did not intend to make future payment loans.

Alternative expiry calculations based on premium payments on a semiannual and quarterly basis were introduced.

In connection with the calculation based on quarterly payments, it was stipulated if premiums had been payable on such basis, beginning November 20, 1940, the end of the twelfth policy year, the available loan value would have been sufficient to pay the premiums due November 20, 1940, and on the 20th days of February and May, 1941, but not sufficient to pay the August 20 premium. Had the remaining cash value been then used to purchase extended insurance, it would have expired November 7, 1941. If a pro rata premium had been calculated as of November 20, 1940, for the thirteenth policy year and all then remaining policy values used to make an automatic premium loan, the insurance would have expired on November 21, 1941 (the table of non-forfeiture values is set out in the policy).

March 30, 1942, the company wrote insured, advising the extended term insurance would expire May 9, 1942, and the policy would then become null and void and would have no further

value unless reinstated. In addition to back premiums evidence of insurability satisfactory to the company was required.

III. Plaintiff assigns as errors relied on for reversal the court erred in its findings of fact and conclusion of law that (1) the policy lapsed for failure to pay the premium due November 20, 1940; (2) the policy had no value and was of no effect at insured's death; (3) in approving defendant's application of the remaining cash value of the policy in the manner most favorable to insured by purchasing extended insurance; (4) in concluding insured's failure to reinstate the policy or to make any further payments after November 20, 1940, is evidence of his acquiescence in the lapse of the policy; and (5) in concluding plaintiff was entitled to nothing and dismissing his petition.

IV. We combine plaintiff's first and second assignments of error for consideration.

The basis of these assignments, as we understand it, is plaintiff's assertion that defendant's failure to send the month's notice provided for under the "Cash Loan Privilege" thus denying insured the opportunity to continue the policy in force by payment, constituted a breach of the contract which relieved insured of paying or tendering the premium to keep the policy in force.

A similar contention was made and rejected in Robb v. Metropolitan Life Ins. Co., 351 Mo. 1037, 1042, 174 S.W.2d 832, 833, where the court stated:

"The appellant seems to hold the theory that the provision lapsing the policy for default in the payment of premiums must be construed in connection with another provision authorizing the respondent to cancel the policy for default in the payment of interest, on one month's notice, when a policy loan equals the cash surrender value; and, therefore, that the policy in the instant case did not lapse because no notice was given under the loan provision. That theory is directly contrary to the holding in the well considered opinion of the St. Louis Court of Appeals in Rick v. John Hancock Mut. Life Ins. Co., 230 Mo. App. 1084, 93 S.W.2d 1126. The two provisions are separate and distinct, not inconsistent, and both should be given effect. Under the policy, upon default in the payment of the premium and the ex-

piration of the ensuing period of grace, the policy lapsed without any notice to the insured, and that was true regardless of whether or not there was an existing policy loan."

Other authorities supporting this distinction are Neighbors v. Union Central Life Ins. Co., 17 Tenn. App. 612, 69 S.W.2d 618, 620; Brisbay v. Prudential Ins. Co. of America, 262 Ky. 161, 89 S.W.2d 642, 644; General American Life Ins. Co. v. Brown, 176 Okla. 500, 56 P.2d 809, 814; Emery v. Prudential Ins. Co. of America, 89 Utah 430, 57 P.2d 747, 748, 749; Strong v. Hercules Life Ins. Co., 284 Mich. 573, 280 N.W. 55, 56; Palmer v. Central Life Assur. Soc. of United States, 193 Minn. 306, 258 N.W. 732, 736; Boring v. Kentucky Home Mut. Life Ins. Co., 150 Fla. 365, 7 So.2d 587, 588, 589; Smith v. John Hancock Mut. Life Ins. Co., 195 Ark. 699, 114 S.W.2d 15, 17. Each of these cases contains many citations in support.

Defendant makes no claim of lapse or forfeiture because of failure to pay the loan. It contends the policy lapsed for failure to pay the premium due November 20, 1940; the provisions in a life insurance policy for lapse on failure to pay a premium when due and for termination when the policy loan equals or exceeds the cash value are separate and distinct. As before indicated, where the policy lapses for failure to pay a premium, there is no necessity for notice of termination as provided for in the policy loan clause. Instead, the value available under the non-forfeiture provisions is reduced by the amount of the indebtedness, and the balance, if any, applied under such non-forfeiture provisions.

Plaintiff agrees that the above cases cited by defendant support its argument of "separate and distinct" but contends defendant did not apply "separate and distinct" in administering this policy as it sought to include interest along with the premium, contending effective notice on interest could only be by notice of forfeiture if nonpayment thereof was claimed as a cause of "lapse".

Plaintiff argues that by declaring a lapse of the policy for nonpayment of annual premium due November 20, 1940, and converting the policy into extended term insurance, the company thereupon prevented insured from reinstating the policy except on evidence of his insurability satisfactory to the com-

pany. This he could not do in March 1942. He contends the company should have used the third expiry calculation set out in Division II, supra; this would have been in strict accordance with its policy obligation. By using this calculation the cash loan balance would have been exhausted, the loan indebtedness against the policy would have exceeded its then value and mailing a month's notice to insured would have been required before the policy could be voided in accordance with the terms of the cash loan provisions set out in Division II, supra.

Stated otherwise, when there no longer existed any value in the policy to make any subsequent automatic premium loans, the company, consistent with the policy provisions, had a simple mode of protection to forfeit the policy on one month's notice to insured, and insured would then have had an opportunity to put more value into the policy without evidence of insurability.

Plaintiff's argument overlooks the fact that even if the net value of the policy had been applied on a pro rata basis to purchase insurance continuing until November 21, 1941, as calculated under this alternative method, the premium due November 20, 1940, had not been paid in full and on November 21, 1941, the policy would have lapsed for failure to pay that premium. In such a situation, no notice of avoidance under the automatic loan clause would have been necessary.

There is the additional fact the quarterly basis for premium payment was last used February 20, 1935, and with the exception of one semiannual premium in May 1935 the remaining premiums were paid on an annual basis, and as indicated, no request was ever made by insured to change to a quarterly basis.

In our opinion the policy was on an annual premium basis in November 1940. Plaintiff's argument as to the effect of using the alternative calculation cannot be accepted.

Premium due notices were forwarded to insured each year commencing with the fifth policy year, in order that he would have notice of payments due and the amount necessary to keep the policy in force, as indicated by exhibits attached to the stipulation. Insured was also notified every time an automatic loan was made to pay premiums, as evidenced by other exhibits which cover every automatic premium loan made to and includ-

ing the November 1939 premium. Insured, therefore, knew exactly what loans had been made. From his policy he knew the cash value at the end of the twelfth policy year and from the 1939 notice knew there was not sufficient loan value to pay the 1940 premium.

No notice was sent insured showing payment of the premium due in 1940 by a further automatic premium loan. He must have known that no such loan was made and the premium was not paid; that failure to pay the premium would cause the policy to lapse as provided by its terms.

Plaintiff also contends insured, by paying the premiums for the first three full years, became entitled to the benefits under the non-forfeiture provisions of the policy set out in Division II, supra; insured did not elect any of these options and the policy then provided if insured shall not exercise this election, the insurance will be automatically continued as provided in option 3, unless insured shall have requested in writing automatic premium loans. He had made this request.

Assuming insured would have been entitled to the benefits of the automatic premium loan provision by reason of these payments and this request, to be effective it would still be necessary that there be enough value available to make a premium loan. This provision specifically provides "that the company will not so advance and charge up a premium, if the amount thereof and interest thereon, as aforesaid, together with any outstanding indebtedness * * * shall exceed the cash value." On November 20, 1940, there was not sufficient cash value to pay the annual premium becoming due. The payment of premiums clause in the policy provides "if any premium * * * is not paid when due, this policy shall be ipso facto null and void, and all premiums forfeited to the company, except as herein provided."

In another contention plaintiff asserts the policy requires notice in case of nonpayment of loan and also for nonpayment of interest, but the company here lapsed the policy for nonpayment of premium and interest; this was more than lapse—it was forfeiture, and notice would be required.

In notices of premium payments due interest was included with the annual premium to be paid. We have considered plain-

tiff's argument in support of this contention but we are unable to agree.

We have considered each of plaintiff's contentions in support of the two assignments asserted here.

We now hold no duty was imposed on the company to give insured a month's notice as a condition to terminate the policy. The provision lapsing the policy for default in payment of premium due is separate and distinct from the provision in the "Cash Loan Privilege" requiring the company to give insured one month's notice before authorizing termination of the policy for failure to repay loan indebtedness. The premium due November 20, 1940, was not paid and the policy was of no force and effect on July 12, 1942. Neither assignment can be sustained.

V. Plaintiff's third assignment of error would not be a determinative point even though we were to resolve it in his favor.

VI. In plaintiff's fourth assignment he complains of the trial court's conclusion insured acquiesced in the lapse of the policy by failing to pay the November 20, 1940, premium.

▮ Acquiescence is a branch of the law of estoppel and is used to defeat a party's action on the principle of equitable estoppel. Swift v. Kansas City Life Ins. Co., 239 Mo. App. 125, 184 S.W.2d 184, 187.

"With certain exceptions not here applicable unless the facts upon which they arise appear on the face of the pleading, ordinarily waiver or estoppel, if relied upon, must be specially pleaded by allegations of ultimate facts supporting such a plea, and the doctrine will not be supported by the pleading of mere conclusions" (citing cases). Halvorson v. City of Decorah, 258 Iowa 314, 320, 138 N.W.2d 856, 860, 861.

▮ Defendant did not plead estoppel. We think the court erred in this conclusion but because of our holding on the other assignment of errors as announced in Division IV, supra, it was not prejudicial.

The action of the trial court in dismissing plaintiff's petition at his costs is—Affirmed.

All JUSTICES concur.