LILLIAN HOLLAND, Respondent, *v.* JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Appellant.

Argued October 13, 1938; decided November 29, 1938.

*George W. Riley* and *John J. Kuhn* for appellant. Values that are "decreased by any indebtedness hereon or secured hereby," as provided in the policy, manifestly are cash values and not the unmatured coverage which would be proportional to the actual cash value. (*Jefferson* v. *N. Y. Life Ins. Co.*, 151 Ky. 609; *Williams* v. *Union Central Life Ins. Co.*, 291 U. S. 170; *Sheiner, Inc.*, v. *Massachusetts Mut. Life Ins. Co.*, 165 Misc. Rep. 569; *McCormack* v. *Security Mut. Life Ins. Co.*, 220 N. Y. 447;

*Bach* v. *Western States Life Ins. Co.*, 51 Fed. Rep. [2d] 191; *New York Life Ins. Co.* v. *Board of Assessors*, 158 Fed. Rep. 462; 216 U. S. 517.) There is no ambiguity in the non-forfeiture options of the policy. These provisions confer rights and do not cut off rights that would otherwise exist in the insured. The intention is clear that on default he shall get only its value in paid-up insurance. (*Imperial Fire Ins. Co.* v. *Coos County*, 151 U. S. 452; *Gould* v. *Equitable Life Assur. Soc.*, 231 N. Y. 208; *Taylor* v. *New York Life Ins. Co.*, 197 N. Y. 324; *McCormack* v. *Security Mut. Life Ins Co.*, 220 N. Y. 447; *Lumber Underwriters Ins. Co.* v. *Rife*, 237 U. S. 605; *Houlihan* v. *Preferred Acc. Ins. Co.*, 196 N. Y. 337; *Halsted* v. *Globe Indemnity Co.*, 258 N. Y. 176; *Becker* v. *London Assur. Corp.*, [1918] App. Cas. 101; *Heller* v. *Pope*, 250 N. Y. 132; *New York Trust Co.* v. *Island Oil T. Co.*, 34 Fed. Rep. [2d] 655; *Kratzenstein* v. *Western Assur. Co.*, 116 N. Y. 54; *First Nat. Bank* v. *National Surety Co.*, 228 N. Y. 469; *Hartigan* v. *Casualty Co.*, 227 N. Y. 175; *Atwater* v. *Panama R. R. Co.*, 246 N. Y. 519; *Towne* v. *Eisner*, 245 U. S. 418; *Witherstine* v. *Employers' Liability Assur. Corp.*, 235 N. Y. 168.) The question of ambiguity in insurance provisions has no relevancy as to those provisions enjoined upon the company by statute, particularly those which are in the category of " standard" provisions. (*Greenfield* v. *Massachusetts Mut. Life Ins. Co.*, 47 N. Y. 430; *Goodwin* v. *Massachusetts Mut. Life Ins. Co.*, 73 N. Y. 480; *Sliosberg* v. *New York Life Ins. Co.*, 244 N. Y. 482; *Broderick* v. *Rosner*, 294 U. S. 629; *Stewart* v. *Union Mut. Life Ins. Co.*, 155 N. Y. 257; *Taylor* v. *New York Life Ins. Co.*, 197 N. Y. 324; *Nelson* v. *Traders' Ins. Co.*, 181 N. Y. 472; *Hamilton* v. *Royal Ins. Co.*, 156 N. Y. 327; *Archer* v. *Equitable Life Assur. Soc.*, 218 N. Y. 18; *McCormack* v. *Security Mut. Life Ins. Co.*, 220 N. Y. 447.) The written loan assignment affords a practical construction by the parties themselves *ante litem motam*. (*Langley* v.

*Prudential Ins. Co.*, 271 Fed. Rep. 776; *Cooper* v. *N. Y. Life Ins. Co.*, 211 S. W. Rep. 548; *Beatty* v. *Guggenheim Exploration Co.*, 225 N. Y. 380; *East Side Garage, Inc.*, v. *New Brunswick Fire Ins. Co.*, 198 App. Div. 408; *Iowa Life Ins. Co.* v. *Lewis*, 187 U. S. 335; *Matter of Hayes*, 252 N. Y. 148; *Board of Assessors* v. *New York Life Ins. Co.*, 216 U. S. 517; *Stevens* v. *Mutual Life Ins. Co.*, 227 N. Y. 524.) The indebtedness is extinguished and repaid to the company out of the reserve immediately on premium default. Being paid and canceled, the loan transaction is closed. It cannot then be paid twice nor can it be brought back to life without a new agreement between the parties. (*Kimball* v. *N. Y. Life Ins. Co.*, 98 Vt. 192; *Hawthorne* v. *Bankers Life Ins. Co.*, 63 Fed. Rep. [2d] 971; *McCall* v. *International Life Ins. Co.*, 196 Mo. App. 318; *Ruane* v. *Manhattan Life Ins. Co.*, 194 Mo. App. 214.)

*Julius L. Schapira* and *Albert P. Singman* for respondent. Plaintiff is entitled to the amount of paid-up insurance specified in the " Table of Non-Forfeiture Values " in the policy, less the indebtedness secured thereby. (*Monsbacher* v. *Prudential Life Ins. Co.*, 273 N. Y. 140; *Hart* v. *Travelers Ins. Co.*, 236 App. Div. 309; 261 N. Y. 563; *Aldrich* v. *New York Life Ins. Co.*, 235 N. Y. 214.)

LEHMAN, J. On June 26, 1916, the defendant insurance company issued a policy insuring the life of Philip Holland in the sum of $2,000, in consideration of the payment of a stipulated annual premium of $55.10 in quarterly installments. By its terms the policy was to become fully paid up after twenty years. The insured paid the premiums for over eighteen years but failed to pay the installment of premium due on September 26, 1934. The policy by its terms remained in force during a " grace period " of thirty-one days. The assured died five days after the expiration of the " grace period."

The plaintiff, his widow, was named as beneficiary of the policy. She filed proofs of death. The policy provided that " if the insured shall die during the continuance of this policy the Company will pay the sum insured, less any indebtedness to the Company hereon or secured hereby and less any unpaid balance of premium for the uncompleted policy year." Though prior to the death of the deceased there had been failure to pay the premium which, by stipulation of the parties, was required to keep the policy in force, yet the policy had acquired a " surrender value " during the lifetime of the assured through regular payment of the premium for a long term of years. Under the provisions of the policy its holder could not be deprived of that surrender value or the insurance which might be purchased with that surrender value.

The policy provides that " after three full annual premiums shall have been paid hereon, then in case of default in the payment of any subsequent premium or instalment, continued after the days of grace," the holder was granted three options as follows:

" Option A — Without action on the part of the holder, the policy will be continued for its value in participating paid-up life insurance (without disability benefits) which will have a yearly increasing surrender value; or

Option B — If the holder so elect, the policy will be terminated and the surrender value paid in cash; or

" Option C — Upon written request by the holder filed at the Home Office of the Company within ninety days from the due date of the premium in default, the policy will be continued at its face amount including any outstanding additions and less any indebtedness to the Company hereon or secured hereby, for its value in participating extended term insurance (without loan privilege or disability benefits) dating from said due date. Such insurance will have a decreasing surrender value expiring with the extension term."

Concededly the holder did not elect to terminate the policy under Option B or file a written request for the

continuance of the policy at its face amount under Option C. Therefore, under Option A the policy was continued " for its value in participating paid-up life insurance." We must determine how such " value " is to be fixed..

" Value " is a term of vague or shifting meaning. In this case the contract itself furnishes the definition of value which both parties accepted and which must be applied by the courts:

" Said surrender value at date of default in payment of premium will be the full reserve on the policy and any outstanding additions, less a sum having a maximum at the end of the third year not in excess of six-tenths of one per centum of the face amount of the policy, and thereafter decreasing, and less any indebtedness to the Company hereon or secured hereby.

" The legal reserve under this policy is computed upon .he American Experience Table of Mortality, with interest at three and one-half per centum per annum.

" The paid-up and extended insurances under Options A and C are such as will be purchased by the surrender value as herein defined, applied as a net single premium at the attained age of the Insured upon the mortality and interest basis adopted for the reserve computation hereunder."

Actuarial computations often require expert skill, and in a description of the method to be applied and the factors to be considered in such actuarial computations, technical terms are sometimes used which are difficult for those without actuarial training or experience to understand. That may be true of the provisions of this policy. Nevertheless, those provisions are not ambiguous and they must be enforced in accordance with their letter, if after study they would carry the same meaning to an informed business man and to the expert technician. Under the terms of this policy, the " surrender value " to be applied as a net single premium for the purchase of paid-up insurance, can be fixed only by a complicated

calculation of the "full reserve on the policy and any outstanding additions," etc. However difficult and complicated that calculation may be, there is no difference of opinion as to the method to be used in calculating the "full reserve" or the correctness of the amount arrived at. The difference of opinion concerns the meaning of the provision that the "surrender value" shall be the "full reserve  *  *  *  *  *less any indebtedness to the Company hereon or secured hereby."*

Prior to his death, the assured had obtained a loan from the insurance company secured by his policy. At the time of his death the indebtedness with interest amounted to $681.87. If there had been no such indebtedness, the cash surrender value, i. e., the "full reserve" undiminished by any deduction, would have been sufficient to purchase paid-up insurance in the sum of $1,796. If, however, the surrender value which is to be applied as a single premium to the purchase of paid-up insurance is, as the policy provides, only the amount of the "full reserve on the policy," etc., *less* the indebtedness, then the amount of paid-up insurance it would purchase is only $203.97.

Undoubtedly the defendant company is entitled to repayment of the loan which it made upon the security of the policy, but it is said that the loan should be repaid out of the proceeds of the paid-up insurance policy purchased by the "full reserve" upon the policy rather than repaid out of the reserve or surrender value before the surrender value is used to purchase the paid-up insurance. The method of repayment urged by the respondent might be the more equitable. On that point opinion may differ; but it is not the method provided in the policy or in the written loan agreement and it is not the method required by law. The policy expressly provides that indebtedness due to the company shall be deducted from the "full reserve." The loan agreement expressly provides that "in case of default in the payment of any premium or

instalment thereof, on said policy, the Company may terminate said insurance, subject to any provisions of law or of the policy prescribing the conditions under which this right may be exercised, and may deduct the indebtedness hereby secured from the amount which would otherwise be the surrender value of the policy, and apply the residue thereof, if any, to the purchase of paid-up or extended insurance, when such insurance is provided for by the terms of the policy, or pay it in cash if those entitled to receive it so elect." We do not say that a provision of the loan agreement inconsistent with the provisions of the policy would be enforceable. That question is not before us. Here the provisions of the policy, though more complicated and more difficult for the uninstructed reader to understand, are entirely consistent with the provisions of the loan agreement; and the loan agreement is evidence that the assured understood and acquiesced in the construction placed upon the policy by the company. Indeed, an insurance company which did not provide in each policy an option by which the cash surrender value, *less* any indebtedness to the company, should be applied as a single premium for the purchase of paid-up insurance, would be violating the law. The Insurance Law of this State (Cons. Laws, ch. 28), section 88, so requires, and so does chapter 175, section 144, of the General Laws of Massachusetts, the State where the defendant company was incorporated. The provision for the deduction of the indebtedness from the cash value of the policy *before* such cash value is used to purchase the paid-up insurance assures the payment of the stipulated amount to the beneficiary of the policy regardless of the length of life of the assured after default in the payment of a premium. Such deduction benefits the holder of a policy where the assured lives beyond the date when the indebtedness, augmented by continuing interest, would exceed or even approach the amount payable under the policy. We find

nothing in the policy which might be construed as a promise by the insurance company for paid-up insurance calculated in any other way.

It is true that the policy contains " a table of non-forfeiture values " which shows that under Option A the holder of a policy on which premiums were paid for eighteen years would be entitled to $1,796. It must be clear, however, even to a casual reader that this table is based solely upon the cash value of the reserve, and it does not purport to show the value of the amount of participating paid-up life insurance under Option A where there is an indebtedness due to the company which under the terms of the policy must be deducted from the full reserve before purchase of the paid-up insurance.

The judgments should be modified by reducing the same to the amount of $203.97, and as so modified affirmed, without costs.

CRANE, Ch. J., O'BRIEN, HUBBS, LOUGHRAN, FINCH and RIPPEY, JJ., concur.

Judgment accordingly.