THE STATE LIFE INSURANCE COMPANY OF INDIANAPOLIS *v.* MCNEESE.

[No. 16,297. Filed March 21, 1939.]

*Milton W. Mangus,* and *Joseph A. McGowan,* for appellant.

*Slaymaker, Merrell & Locke,* and *Clarence F. Merrell,* and *Lewis A. Stebbins,* for appellee.

STEVENSON, P. J.—This is an appeal from a judgment awarding the appellee $6,233.33 on a policy of insurance issued by the appellant company on the life of Harold Graham McNeese of Dallas, Texas.

The errors assigned are, first, that the trial court erred in overruling appellant's motion for new trial, and second, that the trial court erred in each of its conclusions of law, numbered 1 to 4, inclusive. It appears from the record that a policy of insurance was issued to Har-

old Graham McNeese of Dallas, Texas, on the 27th day of April, 1925, in the principle sum of $5,000.00. It further appears that on the 27th day of May, 1932, the insured borrowed from the appellant on said policy $842.48. The insured defaulted in the payment of the premium due April 27, 1933, and made no further payments on said policy. The court found as a fact that on that date there was a cash dividend declared in favor of the insured in the amount of $18.45, which sum was never paid to the insured. The court further found that on the 27th day of April, 1933, under the provisions of the policy concerning non-forfeiture options, said policy had a cash value of $873.65 without considering the accrued dividend of $18.45 and that it had a net cash value of $31.16 after deducting the loan of $842.49. The court further found that this $31.16 was available for the purchase of extended insurance under said non-forfeiture option provisions upon the lapse of the policy for non-payment of premiums; that such sum purchased extended insurance for 234 days or to December 17, 1933. The insured died October 13, 1933 and the court accordingly concluded as a matter of law that the policy was in force on the date of the death of the insured.

The appellant contends that the trial court was in error in adopting the figure of $873.65 as the basis for determining the net cash value of the policy and that according to the policy provisions, the court should have determined first, the net value of the extended insurance as shown in the table of non-forfeiture options; that this value was in truth and in fact $848.65, and that deducting the indebtedness of $842.49, the balance of $6.16 was the true net cash value of the policy and was the equivalent of and sufficient to obtain 46 days extended insurance or to June 12, 1933.

The appellant further contends that the dividend of $18.54 could not be considered by the court as available

for any purpose except that provided in the contract.

The policy provided that dividends at the option of the owner of the policy should be:

"First, paid in cash; or Second, applied toward the payment of any premium; or Third, applied to the purchase of paid-up participating additional insurance which may be surrendered at any time and the reserve value, not less than the original cash value, applied to pay current premiums; or Fourth, left to accumulate to the credit of the Policy with interest at not less than three per cent per annum, and payable at the maturity of the Policy, or withdrawable at any time. Unless the owner of this Policy shall elect otherwise in writing, the apportioned dividends shall be held to the credit of the Policy, in accordance with the Fourth Option, and if any premium is not paid at the expiration of the days of grace the Company will keep the Policy in force by applying said dividend accumulations to the payment due on the Policy, provided such accumulations are sufficient to pay a quarterly installment of an annual premium."

The evidence further disclosed that no written election was made by the insured as to the use of the dividend declared on April 27, 1933, and that the quarterly premium due on that policy was $51.70. The appellant contends that this $18.45 dividend was accordingly governed by the fourth option above quoted which provided that the same shall be "left to accumulate to the credit of the policy with interest at not less than three per cent per annum and payable at the maturity of the policy, or withdrawable at any time."

The appellee contends, however, that this $18.45 is governed by the non-forfeiture options set forth in the policy which provides that "dividend additions to the policy and additional premium payments for any fractional part of the year, if any, will increase the values in the table in proportion to the increase in the value of the reserve thereby." That by adding $18.45 to the

$6.16 the resulting sum of $24.61 is the mathematical equivalent of 185 days of extended insurance on the policy in this case from April 27, 1933, or to October 29, 1933.

In passing upon these various contentions, we must first determine whether or not the trial court was correct in selecting the figure of $873.65 as a basis for determining the net cash value of the policy on April 27, 1933. In the table of non-forfeiture options set forth in the policy after eight full years premiums have been paid, three options are set forth as follows: *"First Option,* extended insurance for years and days for the full amount of this policy—17 years and 272 days; *second option,* upon legal surrender of this policy a paid-up participating policy for $1,865.00; *third option,* amount the company will pay in cash upon legal surrender of this policy or loan subject to the loan provisions hereof, $873.65."

With reference to these options the policy provided that:

> "The owner of this policy may select any one of the options in the following table and in the event that no selection is made the company will continue this policy in force as extended insurance according to the first option and all other options will be deemed waived; such extended insurance being non-participating and without loan or cash values. The values in the table apply only in the event there is no inbedtedness against the Policy, but any such indebtedness may be paid in cash and the values in the table will then be applicable; or if not so paid, the cash and loan values will be reduced by the amount of indebtedness, and the amount of paid-up insurance will be reduced in the ratio of the indebtedness to the net value of such insurance, and the extended insurance shall be for such length of time only as the excess of the net value of extended insurance as shown in the table, over the indebted-

ness, will purchase at the insured's attained age at the net single premium rate by the American Experience Table of Mortality and three per cent interest."

It will be noted that the above provision expressly provides that "the values in the table apply only in case there is no indebtedness against the policy." The policy then provides that if there is an inbedtedness against the policy, the cash and loan values will be reduced by the amount of the indebtedness, and "the extended insurance shall be for such length of time only as the excess of the net value of extended insurance as shown in the table over the indebtedness will purchase."

Since the question involved therefore is the amount of extended insurance, it is apparent that the third option which fixed the cash or loan value of the policy at $873.65 is not involved. We are called upon to determine "the net value of extended insurance as shown in the table." It is stipulated by the parties that the net value of "17 years 272 days" of extended insurance is $848.65. This amount then was the correct figure which the trial court should have used in determining the amount of money available for the purchase of extended insurance after subtracting the indebtedness due on said policy.

The correct interpretation of the contract therefore would leave $6.16 which amount was sufficient under the evidence to purchase 46 days of extended insurance on this policy which would have continued it in force until June 12, 1933. While the policy contains a "table of non-forfeiture options" which shows a cash or loan value of $873.65, it is quite clear that this figure was not to be used in arriving at the net value of the extended insurance as shown in the same table and it is not necessary under the statute that these values be identical. Section 39-801 Burns' Ann. Statutes 1933, §9723 Baldwin's 1934.

While the ordinary policy holder may be unable to understand why there should be a difference in these values, nevertheless the provisions of the policy are not ambiguous and they must be enforced in accordance with their letter if after study they would carry the same meaning to an informed business man and to the expert technician. *Holland* v. *John Hancock Mutual Life Ins. Co.* (1938), 279 N. Y. 218, 18 N. E. (2nd) 133.

Even though this interpretation should prevail, the appellee contends that she is still entitled to have the dividend of $18.54 construed as a dividend addition to the policy and used in purchasing extended insurance.

This brings us to a consideration of the meaning of the phrase "dividend addition" as used in the policy. This phrase has been defined by the Supreme Court of the United States as "paid-up insurance in addition to the face of the policy and purchased with dividends." *Williams* v. *Union Central Life Insurance Company* (1934), 291 U. S. 170, 54 S. Ct. 348. It is apparent therefore that the $18.54 which the appellant was holding "to the credit of the policy" with interest at not less than three per cent per annum and payable at maturity of the policy or withdrawable at any time, was not and can not be considered as a dividend addition under the above definition.

The appellee further contends that at least this cash dividend should have been used to reduce the amount of indebtedness on said policy. Here again this contention can not prevail as against the express provisions of the policy contract. "The company had no right without an agreement with the insured to apply a dividend payable in cash to the reduction of the advance against the policy." *Williams* v. *Union Central Life Ins. Co., supra.*

This proposition was considered by the Court of Appeals of Tennessee in the case of *Neighbors* v. *Union Central Life Ins. Co.* (1933), 17 Tenn. App. 612, 69 S. W. (2nd) 618. In that case the insurance carrier had on hands dividends which, if applied to the purchase of extended insurance, would have been sufficient to carry the policy beyond the date of the death of the insured. In that case the plaintiff insisted that it was the duty of the company to so apply the dividend, and the defendant said that to so apply it was in violation of the terms of the contract. In passing upon this contention the court said, p. 620, 69 S. W. (2nd), *supra*:

> "These policies make provisions for loans and their payments, and also provide upon default in the payment of the current premiums and the policy lapse, then the current dividend shall be paid in cash. We think under the terms of the contract the company is without right to apply the funds in its hand derived from the current dividend to the payment of an obligation secured by the policy, unless the policyholder has exercised his option that they be so applied."

The same question was discussed by the Supreme Court of North Carolina in the case of *Harden* v. *Occidental Life Ins. Co.* (1934), 206 N. C. 230, 173 S. E. 617. In this case the policy of insurance contained four options which the insured might use in disposing of the dividends payable under the policy. Then it provided that "if no option has been elected by the insured, the dividend shall be paid in cash." In this case the dividend which had accrued upon the policy was in excess of the unpaid premium and the plaintiff contended that it was the duty of the defendant to have applied the dividend to the premium and thus prevent a lapse of the policy. In passing upon this question the court said (p. 233):

"There can be no doubt that the policy lapsed unless the defendant should have applied the dividend to the unpaid premium. With respect to the question under consideration the terms of the policy are clear and unambiguous. The insured had the right to determine whether the accrued dividend should be applied 'toward payment of premiums' or to any one of the other designated options; the defendant was not required to make the election for him."

As was said in *Manufacturer's Trust Co.* v. *Equitable Life, etc.* (1935), 244 App. Div. 357, 361, 279 N. Y. S. 457:

"This fund was the property of the insured of which the defendant had no right to make any disposition except in accordance with instructions from him."

It is apparent, therefore, from the authorities above cited that there was no duty upon the appellant to apply the $18.45 dividend to the purchase of extended insurance or to the reduction of the amount of indebtedness against said policy. It was their duty to hold said dividend as an accumulation to the credit of the policy and to have it available for withdrawal at any time in cash. This is in accordance with the provisions of the policy and is not in violation of any statutory requirement.

Since no good purpose appears which would require a retrial of this case, this judgment is accordingly reversed with instructions to the trial court to restate its conclusions of law in conformity to this opinion and to render judgment in accordance therewith.

Judgment reversed.