Lucille L. GOLDHEIM, Administratrix with the Will annexed of the Estate of Theodore D. Peyser, Deceased,

Security Bank, Lydia E. Spiegler and Sol M. Alpher, Executors of the Estate of Louis E. Spiegler, Deceased, Plaintiffs,

v.

CONNECTICUT MUTUAL LIFE INSURANCE CO., Defendant.

Civ. A. No. 2253–57.

United States District Court District of Columbia.

March 23, 1959.

Robert E. Sher, James H. Heller, Washington, D. C., for plaintiffs Lucille L. Goldheim and Security Bank.

Sol M. Alpher, Washington, D. C., for plaintiffs Lydia E. Spiegler and Sol M. Alpher.

James C. McKay, Washington, D. C., and Ralph J. Chittick, Hartford, Conn., for defendant.

HOLTZOFF, District Judge.

This is an action to recover the amounts claimed to be due on two life insurance policies. The case has been tried by the Court without a jury, a jury trial having been waived.

On July 26, 1954, Theodore D. Peyser procured two life insurance policies from the defendant, The Connecticut Mutual Life Insurance Company, each policy being for $25,000 and carrying a monthly premium of $257.25. At different times, assignments were made by the insured to the Security Bank and to Louis E. Spiegler, respectively, as collateral for loans made by them to the insured. The insured died on June 17, 1957. Suit is brought jointly by the Administratrix of his estate, by the Security Bank, and by the Estate of Louis E. Spiegler to recover the net amount of the policies. The defendant contends that the policies lapsed, and the question to be determined here is whether or not the policies actually lapsed.

Under the terms of the policies, the premiums were payable monthly. An additional month or period of grace was granted for the payment of each premium. In addition—although it does not

appear in the policy—it was the practice of the company to grant a further period of fifteen days after the expiration of the period of grace for the payment of the premium. It was the practice of the insured to pay the premiums on about the last day of this last-mentioned extended period, after deducting the amount that could be loaned from the company on the basis of the accumulated cash value of the policies then in effect.

On January 3, 1957, the insured delivered to the insurance agent, who had charge of the two policies, two checks, each for $190.50, representing the net amount of the premiums due in November 1956. Similar checks were delivered by the insured to the agent on February 12, 1957 for premiums due in December 1956. These checks were not deposited until March 1957. Failure to deposit them was due to the negligence of the defendant's agents.

The checks were returned for insufficient funds. The defendant's agents then redeposited the checks, assuming that they would be made good, and so notified the insured. The insured immediately stopped payment on the checks and the checks were again returned with the endorsement that payment had been stopped. Consequently, the checks were never collected. Thereafter, the defendant declared that the policies had lapsed for non-payment of premiums for November and December, 1956.

It is claimed in behalf of the plaintiffs that by delaying the deposit of the checks, the defendant must be deemed to have accepted them as payment and that, therefore, the policies did not lapse but were in effect. It is also argued that failure to pay premiums subsequently to December 1956 is excusable because the defendant, having treated the policies as lapsed, had refused to accept further payments, and it would have been futile to try to tender them.

The Court disagrees with the contention that the checks should be treated as payment merely because they were not deposited within a reasonable time. To be sure, there is a rule of law that it is the duty of a person receiving a check to deposit it within a reasonable time. Failure to deposit a check within a reasonable time constitutes payment provided the maker of the check has been prejudiced, as, for instance, to take a supposititious case, if the financial institution upon which the check had been drawn failed during the intervening period, and if the check would have been paid if it had been presented for payment promptly. It can hardly be said, however, if the maker of the check is not prejudiced and does not change his position by reason of failure to present the check for payment within a reasonable time, that the check must be deemed to constitute payment. Certainly it cannot constitute payment if the maker, after a certain lapse of time, stops payment on the check. It would not do for a person to stop payment on a check and at the same time to contend that the check had paid the debt for which it was issued.

Plaintiffs rely on some cases such as Dulberg v. Equitable Life Assurance Society, 277 N.Y. 17, 12 N.E.2d 554, in which it was held that failure to present a check which was made out by a third party and tendered by the insured as payment of a premium constitutes payment. Obviously, the law governing the check of a third party is entirely different from that which applies to the checks of the debtor, himself. In the Dulberg case, it appeared that if the check would have been promptly deposited, it would have been honored, because the drawer of the check, being a third party and not the insured, had enough funds on deposit to meet the check but later withdrew them. The rule is entirely different in a situation in which the drawer of the check is also the debtor and withdraws or fails to deposit funds sufficient to meet it.

It is urged, however, that the checks would have been honored had they been promptly presented. The Court makes a finding of fact to the contrary. The statements of accounts of the insured in the Security Bank, on which the checks were drawn, show that on the dates on which the checks were delivered and dur-

ing the few days thereafter, there were insufficient funds to have met the checks if they had been promptly deposited. It is argued that it was the practice of the insured to make deposits as checks were presented, and that if the checks in this case were presented promptly, such deposits would have been made. This brings us, however, into the realm of speculation, which is not sufficient foundation for any finding of fact, especially as eventually the insured stopped payment on the checks.

■ It is then urged that the defendant failed in its duty and, therefore, was without right in declaring the policies lapsed, in that it did not send notices of premiums to the two assignees. There is no legal obligation, however, to send such notices, and there is no evidence that there was any practice to send such notices. Moreover, it does not follow that if the assignees had received notices, anything would have been done to have kept the policies from becoming lapsed.

To be sure, it is urged by counsel for the plaintiffs that the assignees, to protect their own rights would probably have paid the premiums. This, again, brings us into the realm of speculation. Moreover, insofar as the Peyser estate is concerned, it is not in a position to take refuge in that argument. Even if valid, which the Court holds it is not, it would apply only to the assignees.

■ Finally, it is urged that by a course of action the company kept the policies alive and, therefore, should be deemed either to be estopped from contending that the policies lapsed, or to have waived failure on the part of the insured to pay premiums. So far as estoppel is concerned, there is no basis for any such inference because there is no showing that the insured changed his position in reliance on any representation or course of action of the insurance company. Such change of position in reliance on a representation or course of action is, of course, an essential element of an estoppel.

■ Waiver, of course, presents different principles. It is urged that by

continuing to send notices of premiums, and a notice of dividends, the company must be deemed to have waived the default. The Court does not agree. In a large organization such as an insurance company, it is natural that all the branches of the organization cannot be apprised of a change in a situation at the same instant and some time may expire before the various branches of the organization may be aware of a situation. It is clear that different officers of the defendant performed the different functions here involved. Surely, such an ambiguous action as sending out a notice cannot be deemed to be a waiver of substantial rights of the insurance company arising out of failure to pay premiums.

In view of the facts and circumstances here summarized, and the applicable principles of law, the Court reaches the conclusion that the plaintiffs are not entitled to recover, and judgment will be rendered dismissing the complaint on the merits.

A transcript of this oral decision will constitute the findings of fact and conclusions of law.