PRESENTATION SISTERS, INC., Respondent v. MUTUAL BENEFIT LIFE INS. CO., Appellant

(189 N.W.2d 452)

(File No. 10723. Opinion filed September 7, 1971)

**Woods, Fuller, Shultz & Smith,** and **H. L. Fuller,** Sioux Falls, for defendant and appellant.

**Kirby, McDonnell & Kirby,** and **Tom Kirby, Jr.,** Sioux Falls, for plaintiff and respondent.

WINANS, Judge (on reassignment).

This is an action upon two life insurance policies issued by The Mutual Benefit Life Ins. Co. of Newark, N. J., hereinafter referred to as defendant or insurer, on the life of George Riley Hahn who died September 15, 1967. Ownership of both of the policies became vested in Ruth H. Hahn on January 17, 1961. Policy No. 3,039,283 issued February 7, 1947, in the sum of $20,000 and Policy No. 3,041,322 issued under date of February 24, 1947, in the amount of $30,000.

The case was tried upon a stipulation of facts which, among other things, set forth, in addition to the foregoing, the following:

"3. Under date of November 7, 1964, Ruth Henkin Hahn who is the same person as the said Ruth H. Hahn, executed an Assignment of Life Insurance Policy as Collateral as to each of such policies, a copy of which assignments are filed herewith as Exhibits C and D which assignments were received by defendant on November 16, 1964.

4. As to policy 3039283 premiums thereon were paid to February 7, 1966, but the premium due February 7, 1966, was not paid. Thereafter said policy was not surrendered to the defendant for its cash surrender value or returned to defendant for conversion into a paid up participating policy. At such time the indebtedness to defendant on such policy, due to loans thereon and certain premiums and interest charged as an indebtedness against the policy, was the sum of $8,279.51 resulting in a cash surrender value of $353.29 which was such as to purchase a term of extended insurance expiring March 19, 1967.

5. As to policy 3041322 premiums thereon were paid to November 25, 1965, but the premium due November 25, 1965, was not paid. Thereafter said policy was not surrendered to the defendant for its cash surrender value or returned to defendant for conversion into a paid up participating policy. At such time the indebtedness to defendant on such policy, due to loans thereon and certain premiums and interest charged as an indebtedness against the policy, was the sum of $11,960.71 resulting in a cash surrender value of $392.40 which was such as to purchase a term of extended insurance expiring September 19, 1966.

6. Notice of such premiums not paid as aforesaid and dividends applicable thereto and of previous premiums and dividends applicable thereto after ownership became vested in her were regularly sent by defendant to said Ruth H. Hahn.

7. Such premium notices were not sent to plaintiff.

8. Defendant did not prior to the death of said George R. Hahn notify plaintiff of the non-payment of such premiums."

The trial to the court consisted simply of the introduction into evidence of the stipulation of facts referred to and

Exhibits A and B, being the policies referred to, C and D, being the assignments of such policies as collateral, together with Exhibit E which is a letter dated October 6, 1967, addressed to plaintiff's attorney, appearing to be a reply to a letter written defendant concerning the policies. At the trial the defendant objected to paragraphs 7 and 8 of such stipulation on the ground that the same were immaterial and that there "is no duty on the part of the defendant to send notices to the plaintiff and no requirement in the policy that it be done and likewise that there was no duty to notify the plaintiff of non-payment of premiums." The objection was overruled.

The assignments of the policies, according to paragraph D of the assignments, were made as collateral security for liabilities of Ruth H. Hahn to the plaintiff. There was no evidence at the trial or in the record as to the amount of such liability. The trial court rendered judgment in favor of the plaintiff against the defendant in the sum of $29,759.98 with interest thereon at the legal rate from September 15, 1967, which judgment is the face amount of the policies in excess of the indebtedness.

The questions presented by assignments of error are:

1. Did the policies lapse because of nonpayment of premiums?

2. Was notice to plaintiff required?

3. Was plaintiff required to show the amount of its claim for which the assignments were secured?

The policies involved are what is referred to in the policies as Whole Life Policies containing Loan and Cash Surrender values, and Non-forfeiture provisions, and insofar as premiums and payments of premium are concerned contain such provisions as, "IN CONSIDERATION of the payment of Premiums as hereinafter provided, hereby insures the Life of GEORGE R. HAHN". Further, under the paragraph which sets forth the premium obligation, it is provided that "Premiums are payable annually in advance at the company's office in Newark, New Jersey, * * * A de-

fault in Premium payments will occur upon the nonpayment of any Premium on the due date; and, except as provided herein, such default will immediately render this Policy null and void." Under general provisions the policy provides, "**Deferment** Any loan, unless for the purpose of paying premiums hereon; * * * may be deferred for a period not exceeding ninety days from date of application therefor." Under Grace and Reinstatement provisions of the policy, it is provided, "Any arrears of Premium and Interest may be paid within thirty-one days from the date of default, provided this Policy has not been surrendered to the Company."

■ The requirement for the prompt payment of premiums is rather generally understood. It has been held that the regular payment of premiums is the very essence of the agreement. In Bach v. Western States Life Ins. Co., 10 Cir., 1931, 51 F.2d 191, 193, the court holds "The policy contains the usual provisions according to the insured the right to keep the policy alive by the payment of premiums, and defining his rights in event of failure to pay renewal premiums. And, of course, the regular payment of premiums is the very essence of the agreement. Mr. Justice Bradley, in New York Life Ins. Co. v. Statham, 93 U. S. 24, 30, 23 L.Ed. 789, said: 'But whilst this is true, it must be conceded that promptness of payment is essential in the business of life insurance. All the calculations of the insurance company are based on the hypothesis of prompt payments. They not only calculate on the receipt of the premiums when due, but on compounding interest upon them. It is on this basis that they are enabled to offer assurance at the favorable rates they do. Forfeiture for non-payment is a necessary means of protecting themselves from embarrassment. Unless it were enforceable, the business would be thrown into utter confusion. * * * The case, therefore, is one in which time is material and of the essence of the contract. Non-payment at the day involves absolute forfeiture, if such be the terms of the contract, as is the case here.' "

■■ It is also well understood in insurance law that if there is any uncertainty or ambiguity in a contract of insurance, it must be construed most strongly against the

insurer and in favor of the insured. Aetna Insurance Company v. Labor, 85 S.D. 192, 179 N.W.2d 271; Couch on Insurance, 2d Ed. § 15.73; also Wilson v. Allstate Insurance Co., 85 S.D. 553, 186 N.W.2d 879, decided May 18, 1971. If the provisions of a contract are clear and unambiguous, the parties must abide thereby. Bach v. Western States Life Ins. Co., supra.

The policies contain a division entitled "Non-forfeiture" and another division entitled "Loans". The provision as to non-forfeiture relates to the rights afforded if the premiums are not paid. It provides that "At the end of any Policy year during the whole of which this Policy shall have been in force, or within three months from default in Premium payments, this Policy may be (1) Surrendered * * * for its Cash Surrender Value; or, (2) Returned to the Company * * * for conversion into a Paid-up Participating Policy". It then provides:

> "If neither of the above options be exercised, and if the Insured shall die within thirty-one days from the date of default, this Policy will be regarded as being then in force and the arrears will be deducted in the settlement hereof; or, if the Insured shall not so die and the arrears shall not be paid or settled as herein provided, the insurance will be AUTOMATICALLY EXTENDED from the date of default for a sum equal to the amount insured by the Policy and any Dividend Additions, together with the amount of any Dividends standing to the credit of this Policy, less the amount of any indebtedness to the Company hereon: provided, in either case, option (1) or (2), set forth above, be not exercised."

This nonforfeiture division then provides the formula for computing cash surrender value and goes on to provide:

> "* * * the term of the Extended Insurance, will be such as the Cash Surrender Value will purchase at Net Single Premium rates."

The stipulation of fact is to the effect that the premiums on Policy No. 3039283 were paid to February 7, 1966, but

the premium then due was not paid nor was the policy surrendered to the defendant for its cash surrender value nor returned to the company for conversion into a paid-up participating policy. It is also stipulated that as to this policy and at such time the indebtedness on account of loans thereon, premiums and interest was the sum of $8,279.51 and that this resulted in a cash surrender value of $353.29 which was sufficient to purchase a term of extended insurance expiring March 19, 1967. This was nearly six months prior to the date of death of the insured.

As to the other policy, No. 3041322, it is stipulated that the premiums were paid to November 25, 1965, but the premium then due was not paid nor was the policy surrendered to the defendant for its cash surrender value nor returned to the company for conversion into a paid-up participating policy. It is also stipulated that as to this policy and at such time the indebtedness on account of loans thereon, premiums and interest was the sum of $11,960.71 and that this resulted in a cash surrender value of $392.40 which was sufficient to purchase a term of extended insurance expiring September 19, 1966, which would be approximately twelve months prior to the date of death of the insured.

Notice of such premiums not paid was sent to Ruth Henkin Hahn who was the owner of the policies assigned as collateral, and there is no provision in the policies for notice of premium or notice of nonpayment of premiums.

45 C.J.S. Insurance § 615, on the subject of insurance, states the general rule as follows: "Notice to the insured that premium is about due, as a prerequisite to enforcing a forfeiture for nonpayment thereof, ordinarily is not necessary, unless it is required by the contract or by statute". It is further provided in said citation that "A statutory provision requiring notice must be complied with in order to permit the insurer to forfeit a policy for non-payment. Such a provision should be strictly construed in favor of the insured".

Where notice is required the following rules are set forth in 45 C.J.S. Insurance § 616, p. 459: "Effect of assign-

ment. In case of an assignment of the policy the notice should be given to the assignee if the assignment is an unqualified and absolute one; but if the assignment is made merely as collateral the notice should be given to the assignor, and not the assignee, although the assignment is made with the knowledge or consent of insurer."

The plaintiff recognizes that, if nothing more were involved than the nonpayment of premiums, the insurer would be correct in its position, but takes the position there is something more involved, namely, a loan and states his position in the following words: "In all cases where a loan is involved and premium is not paid, notice must be given, not only to the insured, but also the assignee". This contention involves the Policy provisions including the construction of the Loans division, and of the Non-forfeiture division of the Policy and also the provisions of the statute in effect at the time of the issuance of the policy.

The Loan provisions of the policy provided for loans up to the limit of cash surrender value and it further provided, "Accrued interest, at the effective rate of five per centum per annum, will be payable at the same time as the Premiums are payable; or, if there be no further Premiums due, at the end of each Policy year. If not paid when due, it shall be added to the principal (and thereafter bear interest), provided the entire indebtedness then outstanding shall be within the above limit at the next interest due date; otherwise nonpayment of interest shall render this Policy null and void thirty-one days after notice shall have been mailed to the last known address of the Insured and Assignee, if any. Loans may be paid off while the Policy is in force."

This provision is in compliance with SDC 31.1610 which was in effect at the time of the issuance of the policies as follows:

"No policy of life insurance in form other than as prescribed in sections 31.1601 to 31.1606, inclusive, shall be issued or delivered in this state, * * * if it contain any of the following provisions:

(1) A provision for forfeiture of the policy for failure to repay any loan on the policy or to pay interest on such loan while the total indebtedness on the policy is less than the loan value thereof; or any provision for forfeiture for failure to repay any such loan or to pay interest thereon, unless such provision contain a stipulation that no such forfeiture shall occur until at least one month after notice shall have been mailed by the company to the last known address of the insured and of the assignee, if any".

The Loans division on the policy also provides: "Upon a written request filed with the Company at its office in Newark, New Jersey, at any time prior to the due date, or within thirty-one days thereafter, any arrears of Premium and Interest will be charged as an indebtedness against this Policy, provided the entire indebtedness then outstanding shall be within the above limit at the next interest due date."

■ The stipulation included the interest in arriving at the total indebtedness against the policy as set forth in paragraphs 4 and 5 and therefore, so far as the policy terms are concerned, no notice of forfeiture on that ground could validly be given because there simply wasn't any interest unpaid. It had been included in the total indebtedness against the policy, leaving a cash surrender value which was sufficient to purchase a term of extended insurance, as hereinbefore set forth. The premium is not an indebtedness. There is no agreement in the policy to pay it. Its payment is a condition necessary to keep the policy in effect. It may become an indebtedness under the Loan provisions of the policy only, "Upon a written request filed with the Company at its office in Newark, New Jersey". There is no evidence of any such written request.

It is plain that the policy form as issued is not a South Dakota standard form. SDC 31.1601 provides for the form in which a standard form policy may be issued and delivered in this state. SDC 31.1601(8) provides for the required contents of a loans provision of a standard form and it provides that the company will make loans to the extent of the reserve

at the end of the current policy year, deducting therefrom any existing indebtedness to the company on the policy and any unpaid balance of the premium and may collect interest in advance on the loan to the end of the current policy year and provides that such loan may be deferred by the company for not exceeding six months after the application therefor is made. Again, this record does not show any application to make a loan to pay the premium for the current policy year. This statute also provides, "Failure to repay any such advance or to pay interest shall not void this policy unless the total indebtedness hereon to the company shall equal or exceed such loan value at the time of such failure, and until one month after notice shall have been mailed by the company to the last known address of the insured, and of the assignee, if any." Again, there was no failure to pay interest. It was added to the principal and the total indebtedness then outstanding against the policy had to be less than the loan value on the policy because there was sufficient excess value to purchase extended insurance for a considerable length of time, nor did this provision in the statute require the company to pay the annual premium from the cash value which in this case was not sufficient to do on either policy, nor does it make an unpaid premium a loan.

SDC 31.1609 in pertinent parts is as follows:

> **"Provisions required in other than standard forms.** No policy of life insurance in form other than as provided by sections 31.1601 to 31.1606 inclusive shall be issued in this state, or be issued by a life insurance company organized under the laws of this state, unless the same shall contain the following provisions:
>
> (1) A provision that all premiums shall be payable in advance, * * * upon delivery of a receipt signed by one or more of the officers who shall be named in such policy;
>
> (2) A provision for a grace of thirty days for the payment of every premium after the first, which may be subject to an interest charge, during which time the insurance shall continue in

force, which provision may contain a stipulation that if the insured shall die during the thirty days of grace, the overdue premium will be deducted in any settlement under the policy;

\* \* \* \* \* \*

(7) A provision that after three full years premiums have been paid, the company at any time, while the policy is in force, will advance, on proper assignment of the policy and on the sole security thereof \* \* \* a sum equal to or \* \* \* less than, the reserve at the end of the current policy year on the policy and on any dividend additions thereto, \* \* \* and that the company will deduct from such loan value any existing indebtedness on the policy and any unpaid balance of the premium for the current policy year, and may collect interest in advance on the loan to the end of the current policy year; which provision may further provide that such loan may be deferred for not exceeding six months after the application therefor is made. It shall be further stipulated in the policy that failure to repay any such advance or to pay interest shall not avoid the policy, unless the total indebtedness thereon to the company shall equal or exceed such loan value at the time of such failure nor until one month after notice shall have been mailed by the company to the last known address of the insured and of the assignee, if any."

The quoted provisions of the statutes regarding loans both on the standard and nonstandard forms are consistent insofar as this case is concerned.

In the case of Goldheim v. Connecticut Mutual Life Insurance Co., D.C., 1959, 172 F. Supp. 195, 198, District Judge Holtzoff lays down the rule as follows:

"It is then urged that the defendant failed in its duty and, therefore, was without right in declaring the policies lapsed, in that it did not send notices of

premiums to the two assignees. There is no legal obligation, however, to send such notices, and there is no evidence that there was any practice to send such notices. Moreover, it does not follow that if the assignees had received notices, anything would have been done to have kept the policies from becoming lapsed.

To be sure, it is urged by counsel for the plaintiffs that the assignees, to protect their own rights would probably have paid the premiums. This, again, brings us into the realm of speculation. Moreover, insofar as the Peyser estate is concerned, it is not in a position to take refuge in that argument. Even if valid, which the Court holds it is not, it would apply only to the assignees."

To the same effect Mutual Benefit Life Ins. Co. v. First National Bank, 115 Ky. 757, 74 S.W. 1066, and Massachusetts Mut. Life Ins. Co. v. Pinellas Cent. Bank & Trust Co., Fla. App., 175 So.2d 245.

In Massachusetts Mutual Life, supra, the insured, one Carl F. Falzoni, assigned and delivered to Pinellas Central Bank and Trust Co. the policy as collateral security for a loan. The court held, "After the assignment the bank held the policy as collateral for a loan—the exact amount of which is not shown by the record and which, so far as we can find, was never disclosed to the insurer—subject to all the conditions of the policy so far as they impose duties and obligations upon Falzoni. Among these duties and obligations were that premiums were to be payable in advance before their due date; that a default in premium payment would occur upon non-payment of any premium on its due date; and that if any premium in default was not paid before the end of the grace period, fixed in the policy at 31 days after the due date of the defaulted premium, the policy would lapse and terminate as of the due date of the premium in default." It further held, "While it may be that the insurer never gave the bank notice that a premium payment was due on the policy, we think that this makes no difference, because there was nothing in the policy or in

any arrangement between the parties requiring notice to be given. Under these circumstances, the insurer was under no duty to inform the assignee of the time when payment of premiums was required; if the bank desired this information it had the duty to make periodic inquiries of the insurer as to the dates premiums were due and the amounts thereof. (citations given)"

■ The plaintiff contends that plaintiff assignee was entitled to notice not only under the terms of the statute but also under the terms of the policies as written because, as he says, both the nonpayment of premium and the nonpayment of the loan or interest occurred simultaneously and that by reason thereof the entire indebtedness then outstanding was not within "the cash surrender value at the next interest due date". However, according to the stipulation the interest was paid by adding it to the principal amount which was due at the anniversary of the policy year. The cases uniformly hold that a premium due on a life insurance policy is not a debt nor collectible as debts; its payment is simply a condition necessary to keep the policy in effect. It becomes due only as a condition to continuing the insurance, and under the loan provision of the policy and under the statutes quoted, there must be a written request filed with the company to make a loan for the purpose of paying the premium. There is no evidence of such written request. Renewal premiums on policies of life insurance are not debts due the insurer and are not collectible as debts. Manning v. John Hancock Mutual Life Ins. Co., 100 U.S. 693, 25 L.Ed. 761. There is no personal liability for premiums and their payment is only a condition precedent to liability of the insurer. 43 Am.Jur.2d, Insurance, § 531. To the same effect is the case of Del Rio v. Prudential Insurance Co. of America, 269 N.Y. 135, 199 N.E. 32, which is significant in involving the same statutory provisions as SDC 31.1609(7).

Brisbay v. Prudential Ins. Co. of America, 262 Ky. 161, 89 S.W.2d 642, is pertinent in part: "It is insisted for appellant that the past-due premium was a part of the indebtedness against the policy and, therefore, the insurance company could not terminate it without giving the 30 days' notice. It

will be noticed that the 30 days' notice provision is contained in that clause of the policy titled 'Loan Provisions,' and the provision relating to the payment of premiums is contained in a separate provision titled 'Payment of Premiums.' It is obvious that these two subjects, loans and premiums, are separate and distinct, and cannot be added together to form the 'indebtedness' referred to under the 'Loan Provision.' "

Burgardt v. Lincoln National Life Insurance Co., 260 Iowa 667, 149 N.W.2d 292, quotes with approval from the case of Robb v. Metropolitan Life Ins. Co., 351 Mo. 1037, 174 S.W.2d 832, where the court stated:

"The appellant seems to hold the theory that the provision lapsing the policy for default in the payment of premiums must be construed in connection with another provision authorizing the respondent to cancel the policy for default in the payment of interest, on one month's notice, when a policy loan equals the cash surrender value; and, therefore, that the policy in the instant case did not lapse because no notice was given under the loan provision. That theory is directly contrary to the holding in the well considered opinion of the St. Louis Court of Appeals in Rick v. John Hancock Mut. Life Ins. Co., 230 Mo.App. 1084, 93 S.W.2d 1126. The two provisions are separate and distinct, not inconsistent, and both should be given effect. Under the policy, upon default in the payment of the premium and the expiration of the ensuing period of grace, the policy lapsed without any notice to the insured, and that was true regardless of whether or not there was an existing policy loan."

43 Am.Jur.2d Insurance, § 531 provides:

"While the payment of premiums or assessments as specified in the insurance contract is necessary in order to bind the insurer to discharge its obligations imposed by the contract, it is generally true in the case of life insurance contracts that there is no absolute undertaking to pay the premiums or assessments and, consequently, no personal liability

therefor; their payment is usually only a condition precedent to the liability of the insurer, and the insured, if he has not expressly promised to pay, is at liberty to refuse to make payment. This is true with respect to renewal, as well as original, premiums, and an insured usually has the right to elect whether he will continue to pay the premiums or assessments as they become due under the provisions of a policy of life insurance or whether he will allow the contract to be forfeited."

█ It is our view that no notice was required to be given the plaintiff assignee on account of the nonpayment of premium and that the policies lapsed on account of such nonpayment of premium, and not because of any nonpayment of loan or interest thereon.

The judgment appealed from is reversed with directions to enter judgment for the defendant.

All the Judges concur.