**Raymond COX, Plaintiff and Appellant,**

v.

**BROOKINGS INTERNATIONAL LIFE INSURANCE COMPANY, Defendant and Appellee.**

No. 13777.

Supreme Court of South Dakota.

Argued Nov. 15, 1982.

Decided March 23, 1983.

Reed C. Richards of Richards & Richards, Deadwood, for plaintiff and appellant.

G.J. Danforth, Jr. of Danforth, Danforth & Johnson, Sioux Falls, for defendant and appellee; Robert L. Mabee of Danforth, Danforth & Johnson, Sioux Falls, on the brief.

MORGAN, Justice.

This appeal arises from an action to recover the proceeds of an insurance contract brought by the beneficiary, Raymond Cox appellant (Cox), against Brookings International Life Insurance Company, appellee (Company). After both sides had rested, the trial court directed a verdict in favor of Company and Cox appeals. We affirm in part, reverse in part, and remand.

In April of 1975, Cox's wife applied for and received a life insurance policy on their son, Steven, from Company. Mrs. Cox had, as a regular practice, assumed the responsibility to gather the monthly bills and write checks for payment of the family expenses, including insurance premiums. Upon her death in October of 1977, Cox succeeded to ownership of the policy as he was the sole surviving beneficiary. From that time he also assumed responsibility for payment of the family bills which included premiums on thirteen various types of insurance policies. Cox testified that he depended upon receiving notice in the mail from the insurance companies that premiums were due in order to know when to pay the premiums. On June 10, 1978, Steven was killed in a car accident. After Cox notified Company of Steven's death, he received a letter from Company advising him that coverage under the policy had lapsed due to nonpayment of the premium which was due on April 1, 1978. Cox initiated this action to recover on the policy and, at trial, at the close of all the evidence on motion of the Company the trial court directed a verdict for Company. This appeal follows.

In reviewing a directed verdict, this court views the evidence in a light most favorable to the nonmoving party and gives that party the benefit of all reasonable inferences; if there is enough evidence to allow reasonable minds to differ, then the directed verdict was inappropriate. *Smith v. Halverson,* 273 N.W.2d 146 (S.D.1978); *Lytle v. Morgan,* 270 N.W.2d 359 (S.D. 1978); *Beck v. Wessel,* 237 N.W.2d 905 (S.D. 1976).

The threshold issue on this appeal is whether notice is necessary and if so what constitutes adequate notice to an insured that an insurance premium is due. Company first argues that since the policy of insurance, which contains the premium amounts and the due dates, makes no further provision to require notice to the policyholders, no notice is due because the policy owner has actual knowledge of both the amount and due date thereof. This argument is unsupportable. Insurance companies generally are interested in collecting premiums. They send out notices, usually well in advance of the due date. Such notices almost universally furnish policyholders not only a "tickler" reminder of the upcoming due date but a return envelope properly addressed and a coupon or other memo to be returned with the payment to insure proper accounting.

■ We note the general rule that the necessity for an insurance company to give notice to an insured of a premium due even absent a policy provision may be based upon the practice of the particular insurer. 5 Couch on Insurance § 30:128 at 661 (1960); 43 Am.Jur.2d *Insurance* § 849 (1982); *Seavey v. Erickson,* 244 Minn. 232, 69 N.W.2d 889 (1955); *Pester v. American Family Mutual Insurance Co.,* 186 Neb. 793, 186 N.W.2d 711 (1971); *Carfagnini v. Service Life Insurance Co. of Omaha,* 113 N.J.Super. 469, 274 A.2d 303 (1971). Cf. *Presentation Sisters, Inc. v. Mutual Ben. Life Ins. Co.,* 85 S.D. 678, 189 N.W.2d 452 (1971) (no notice required to an assignee of policies assigned as collateral security for liabilities). As stated by the Minnesota Supreme Court in *Seavey, supra,* this rule is:

> Where it has been established that it is the custom and practice of the insurer to give notice of the time for payment of a renewal premium and knowledge of such custom is acquired by an insured in dealings with the insurer, the insurer has a right to rely on such notice, and, in the absence thereof, the policy may not be terminated or forfeited without giving the insured some notice that such custom has been abandoned.

244 Minn. at 243–44, 69 N.W.2d at 897 (footnote omitted).

■ The life insurance policy insuring Steven was entered into on April 1, 1975, when Steven was fourteen years of age. The policy provided for quarterly premiums and each quarter Company notified the Cox' in advance that the $10.50 premium would be due. Cox testified at trial that he relied on such notice that a premium due date was forthcoming in order to pay the premium. Accordingly, because Company notified Cox each quarter that the premium on this policy was due, Company was required to continue this practice unless it specifically notified Cox that it would discontinue such notification.

Company next asserts its strongest point, that in fact proper notice of the premium due was given to Cox. This is the view that the trial court adopted in directing the ver-

dict. Company contends that it mailed a premium notice to Cox; however, Cox testified that he did not receive it.

■ It is well established that proof of mailing by depositing a letter in a proper mail receptacle, properly addressed and stamped, raises a presumption of delivery to the person addressed; however, it is only a rebuttable presumption. See *Ebert v. Fort Pierre Moose Lodge # 1813,* 312 N.W.2d 119 (S.D.1981); *Bank of Ipswich v. Harding County, Etc., Ins. Co.,* 55 S.D. 261, 225 N.W. 721 (1929). At the trial, Company went to great lengths to establish proper mailing. There was testimony from a company official and a mailroom employee as to the procedure, and mail logs that demonstrate mailing of the particular piece in question. From the record before us we cannot say that the trial court erred in finding that there was a presumption of delivery. Cox, however, not only testified that he had not received the notice but further went to some lengths to demonstrate his own household procedures for handling incoming mail, including bills and premium notices. Cox also demonstrated that during the period from early February to late June, during which time the lapse occurred, he had sent checks in payment of premiums on thirteen other policies; five of which were paid in the month of May. While concededly the mere denial of receipt alone would not be enough, since Cox presented other substantial evidence we agree with what this court stated in *Bank of Ipswich:*

> This rebuttable presumption, with supporting evidence on behalf of [Company] and denial of receipt with its supporting testimony on the part of [Cox], was such, in our opinion, as to make the question of receipt a subject for the determination of the trier of fact.

55 S.D. at 268, 225 N.W. at 723 (citation omitted).

■ In reviewing this directed verdict, this court must view the evidence in a light most favorable to Cox. *Smith v. Halverson, supra; Lytle v. Morgan, supra; Beck v. Wessel, supra.* Since there is enough evidence to allow reasonable minds to differ,

the directed verdict was inappropriate. The trial court should have permitted the trier of fact to determine the issue of receipt.

■ Although we are remanding this case, we address the second issue since, on remand, the trial court may have to reconsider this question. The second issue on appeal is the admissibility of testimony as to Cox's reputation for veracity. The trial court here refused to permit this testimony and Cox appeals from the refusal.

Cox contends that he did not receive notice that the insurance premium was due. Accordingly, he attempted to introduce testimony of a minister, a banker, and a neighbor as to his good reputation in the community for veracity. Cox contends the trial court could have admitted the testimony under SDCL 19–16–25. That rule adopted from Federal Rule of Evidence (F.R.E.) 803(21), provides: "Reputation of a person's character among his associates or in the community is not excluded by § 19–16–4, even though the declarant is available as a witness." SDCL 19–16–4 is the general rule providing that hearsay evidence is inadmissible.[1]

At trial, the court ruled that, while the evidence could be admitted under SDCL 19–16–25, there are two statutes limiting that provision, SDCL 19–12–4 and 19–14–9. SDCL 19–12–4 (F.R.E. 404(a)) provides, in pertinent part:

Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

. . . .

(3) Evidence of the character of a witness, as provided in §§ 19–14–8 to 19–14–16, inclusive.

SDCL 19–14–9 (F.R.E. 608(a)) provides:

The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations:

(1) The evidence may refer only to character for truthfulness or untruthfulness, and

(2) Evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

According to 3 Weinstein's Evidence 608–3 (1981), the purpose of F.R.E. 608 (SDCL 19–14–9) is to develop the exception stated in F.R.E. 404(a) (SDCL 19–12–4) that character evidence is admissible only as bearing upon the credibility of a witness. Under F.R.E. 608 (SDCL 19–14–9), character evidence of credibility is admissible only after the witness' character has first been attacked. 3 Weinstein's Evidence 608–5 (1981). This is as the case has been at common law. McCormick § 49, p. 105 (1972); 4 Wigmore § 1104 (1972).

Consequently, for the trial court to admit the testimony here, the evidence must show that Cox's character has first been attacked. To determine whether a witness' reputation has been attacked, 3 Weinstein's Evidence 608–5 (1981) states:

Opinion or reputation that the witness is untruthful specifically qualifies as an attack under the rule, and evidence of misconduct, including conviction of crime, and of corruption also fall within this category. Evidence of bias or interest does not. McCormick § 49; 4 Wigmore §§ 1106, 1107. Whether evidence in the form of contradiction is an attack upon the character of the witness must depend upon the circumstances. McCormick § 49. Cf. 4 Wigmore §§ 1108, 1109.

*Id.* Company introduced testimony indicating that Cox may have an interest in testifying that he did not receive the notice. According to *Weinstein,* this testimony merely indicating bias or corruption does not qualify as an attack on Cox's reputation.

---

1. SDCL 19–16–4 states:
   Hearsay is not admissible except as provided by law or by chapters 19–9 to 19–18, inclusive, or by other rules prescribed by the Supreme Court.

Additionally, the only evidence of a contradictory nature was the testimony of Company employees explaining the procedures for mailing the notice of premiums due. This testimony may have been contradictory to Cox's testimony that he did not receive the notice. The test to ascertain whether this contradictory evidence is an attack, depends upon the circumstances. 3 Weinstein's Evidence 608–5 (1981). Considering the record before us, including the testimony of Company's witnesses and the cross-examination of Cox, the evidence does not indicate that Cox's reputation was attacked. Accordingly, under the circumstances of the trial below, the court correctly denied admission of this testimony.[2]

We affirm in part, reverse in part, and remand.

WOLLMAN and DUNN, JJ., concur.

HENDERSON, J., concurs specially.

FOSHEIM, C.J., dissents.

HENDERSON, Justice, specially concurring.

Computers and organizational procedures in an insurance company, are they infallible? Do computers make mistakes? Are all procedures in insurance companies for mailing out premium notices perfect?

Are we mortals, who invented the computers, enslaved to their supposed correctness? Or do we still have the intellectual right to question their propriety, authenticity, reliability, and the possibility of malfunction?

Well, lo and behold, plaintiff-appellant testified herein concerning the reliability of a computer, which evidence went into the record without objection and before the jury, that defendant-appellee's agent in South Dakota, a Mr. Roth, had expressed that his company's computers had malfunctioned "at that time." "At that time" referred to the approximate time when premium notices were sent out, which included a time-frame germane to appellant's premium notice. Indeed, in its defense testimo-

ny, the insurance company shored its case up beautifully with personnel from Ohio that its overall procedures were followed to the proverbial "T." And yes, according to this defense testimony, the computers had safeguards for default provisions, and any malfunction would trigger the computer to recycle and print an entire batch of premium notices. Conclusion: per defense testimony, the computer and all mailing procedures were faultless.

This insurance company, in essence, relied upon its computers, mailing logs, and supposed faultless procedures. Based upon this faultless programming, the trial court determined that the evidence of plaintiff-appellant was not competent or probative, and further determined, by theory, that the South Dakota agent of the insurance company did not have personal knowledge of the Ohio computer operations. The verdict was directed against the plaintiff-appellant for, you see, how could the infallibility of the procedures be questioned? Alas, a human element was in the case for somewhere, somehow, as an agent of the insurance company, Mr. Roth learned of the trouble with the computer operation in Ohio. Oh, woe unto the doctrine of computer infallibility. A key to this is found in the testimony of one of the company's experts who admitted that the company did not keep the malfunction "as a secret." From this same expert witness, came the revelation that there were premiums which the company received late and some were as late as approximately 75 days. Grace periods had to be considered. During this phase of the trial, this company expert attempted to restrict these late premiums to a time unrelated to the plaintiff-appellant's due premium. To repeat: the timetable was germane to plaintiff-appellant's premium via the testimony of the company's licensed agent in South Dakota. Company officials described him as one of their top representatives and salesmen. It developed during the testimony that Mr. Roth had access to telephone communication with the company and the malfunction being, no se-

2. On remand, based upon new testimony, the trial court may have to reconsider this issue.

cret, became knowledge to him. The malfunction of the computer which processed premiums was knowledge within the company at Ohio and apparently spilled over into its office at Brookings, South Dakota. Thus, in my opinion, the trial court should not have disregarded, in toto, the testimony of Mr. Roth relating to the computer malfunction. It was highly relevant as to the receipt of a premium notice by plaintiff-appellant. A classic question of fact arose and it was for the jury to determine that question of fact and not the trial court. Further, I add that it is altogether conceivable that there was human error for the facts additionally disclose: that the quarterly notices, first generated by a computer in Ohio, were then sent to Brookings, South Dakota, there matched by hand and placed in an envelope, to be then mailed to policyholders such as plaintiff-appellant.

These presumptions of law are based upon hypothesis. I refuse to hypothesize that computers cannot err. That plaintiff-appellant was presumed to have received this premium notice, was surely a rebuttable presumption.

> The presumption of receipt of a letter duly mailed is ordinarily indulged in only when there is an absence of evidence to the contrary. *Roshek Realty Company v. Roshek Brothers Company,* 249 Iowa 349, 87 N.W.2d 8 (1957); 29 Am.Jur.2d, Evidence § 194 (1967).

*Ebert v. Fort Pierre Moose Lodge # 1813,* 312 N.W.2d 119, 126 (S.D.1981). By a wisp of mental process, these presumptions of law are created. When facts come into evidence to negate the presumption, these presumptions of law, which flit about in theory like a butterfly, lose their credible force, for they cannot contend against reality. In *Matter of Voorhees,* 294 N.W.2d 646,

651 (S.D.1980), I expressed my opinion on presumptions of law and it is applicable to my thoughts herein:

> A presumption is just that: It is like a night bird, that flits about in the twilight and into the dark, but disappears under the light and sunshine of actual facts. The sunshine of the facts probe and reveal more than a presumption of law; we must never lose sight of this.

As the human dimension of justice cannot be sacrificed for the ostensible purity of the computer world, I join the majority opinion.

FOSHEIM, Chief Justice, dissenting.

The trial court correctly directed a verdict for the insurance company. I cannot agree that Cox presented "other substantial evidence," in addition to his mere denial, that he did not receive notice. How Cox said he handled his incoming mail or that he paid premiums on other policies is irrelevant and proves nothing beyond his self-serving statement as to notice. On the other hand, the insurance company proved, pursuant to the business records statute,[1] that it notified Cox not only by mail but also by telephone. True, this telephone call was taken by Steven Cox, appellant's son, then 17 years of age. Our service of process statutes, however, allow notice of the commencement of a law suit, for an unlimited amount, by service on a 14 year old. SDCL 15–6–4(e). Can we properly demand more regarding an insurance contract which doesn't even require the giving of notice.

The evidence does not leave room for reasonable minds to differ about whether Cox was notified. *Smith v. Halverson,* 273 N.W.2d 146 (S.D.1978). To hold otherwise would allow anyone who has let an insurance policy lapse for nonpayment of premi-

1. SDCL 19–16–10 reads: A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, is not excluded by § 19–16–4, even though the declarant is available as a witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this section includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

um to nevertheless seek recovery from a jury, by simply saying, "I do not recall getting a notice." It would thus tend to encourage fraud and destabilize the insurance industry.

